Alice GONG, Individually and as Administrator of the Estate of Ray F. Gong, deceased, Plaintiff–Appellant,

v.

Edward HIRSCH, M.D.,
Defendant–Appellee.

No. 89–1552.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22, 1990.
Decided Sept. 24, 1990.

Ernest T. Rossiello, Chicago, Ill., for plaintiff-appellant.

Alfred Tisdahl, Jr., Robert A. Kezelis, Russell Veldenz, Joan D. Lindauer, French, Rogers, Kezelis & Kominiarek, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, CUDAHY, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Plaintiff-appellant Alice Gong, administrator of the estate of her deceased husband, Ray Gong, appeals various rulings of the district court made during the trial of her medical malpractice suit, which resulted in a jury verdict in favor of the defendant. For the following reasons, we affirm the judgment for the defendant and the district court's denial of a motion for a new trial.

## I BACKGROUND

### A. *Facts*

In July 1987, Ray and Alice Gong filed a diversity action in federal district court against Dr. Edward A. Hirsch. The complaint alleged that Mr. Gong had suffered a perforated peptic ulcer on June 23, 1986, as the result of Dr. Hirsch's negligence in prescribing the drug prednisone to treat Mr. Gong's chronic obstructive pulmonary disease (COPD). The complaint further alleged that Dr. Hirsch's alleged negligence and the resulting perforated ulcer were the cause of Mr. Gong's permanent disability and forced early retirement from his profession as an engineer.

On January 17, 1988, Ray Gong died. Shortly thereafter, Mrs. Gong, individually and as administrator of her husband's estate, amended the complaint to allege that Dr. Hirsch's negligence was a cause of both Mr. Gong's injuries resulting from the perforated peptic ulcer and his death a year and a half later. The amended complaint alleged that Dr. Hirsch negligently failed to monitor Mr. Gong's condition following the prescription of prednisone, failed to take the necessary precautions associated with the prescription of such a drug, and failed to obtain Mr. Gong's informed consent to the use of the drug and the potential consequences of its use. In addition to the medical expenses and compensation for permanent disability sought in the original complaint, the amended complaint sought damages for Mr. Gong's alleged wrongful death.

### B. *Trial*

On the district court's own motion, the case was bifurcated as to the issues of liability and damages. Following a jury trial on the sole issue of liability, the jury returned a verdict for the defendant. The plaintiff moved to set aside the verdict, for judgment notwithstanding the verdict, or in the alternative, for a new trial.[1] The district court denied the motion. The plaintiff now appeals from the judgment of the district court denying her posttrial motions.

## II ANALYSIS

The issues in this case pertain to specific evidentiary and instructional rulings of the district court. Accordingly, to facilitate our analysis, we shall introduce each issue with a discussion of the facts pertinent to that issue.

### A. *The Schleinkofer Letter*

The first of the evidentiary issues concerns a letter written from Mr. Gong's family physician, Dr. Schleinkofer,[2] to a

---

1. The district court entered an order stating that the clerk's office had refused to file plaintiff's initial motion to set aside the verdict because the motion did not comply with Local Rule 9(d) of the Northern District of Illinois. The district court then granted the plaintiff leave to revise her motion "to conform with General Rule 9(d) and to eliminate assertions and assumptions outside the record." R.133. Plaintiff then filed

an amended motion within the time extension set forth by the district court.

2. Although Dr. Schleinkofer was Mr. Gong's family physician for a period of time before and after Mr. Gong suffered the perforated peptic ulcer, Dr. Schleinkofer was not Mr. Gong's treating physician at the time of the illness in question. R.156 at 25 (Deposition of Dr. Robert Schleinkofer); Memorandum Opinion and Or-

doctor at the medical department of General Electric, Mr. Gong's employer. The letter stated, in pertinent part:

> Ray Gong has severe emphysema, worse the past several years; in fact, he has been hospitalized several times this year because of respiratory failure. Ray continued to work even with his poor health until, *he had a perforated peptic ulcer due to prednisone in May, 1986.*
>
> Ray's ulcer was repaired surgically, and is recovering well from the surgery. His real problem at present is his severe emphysema. Chest x-ray, pulmonary function tests and arterial blood gases confirm the severity of Ray's emphysema. At present he is totally disabled, he is on oxygen at 1–2 litters [sic] pre [sic] minute for 24 hrs a day.
>
> I do not know if and when Ray will return to work.

R.142 Ex. B (exhibit to deposition of Dr. Robert Schleinkofer) (emphasis supplied).

### 1. Rule 703

The plaintiff characterized this letter as a "medical report," but was prevented several times from submitting the letter to the jury. The plaintiff sought to introduce the letter during the testimony of her medical expert, Dr. Birnbaum, as the basis for Dr. Birnbaum's opinion that Mr. Gong's perforated ulcer was caused by the administration of prednisone. For the following reasons, the district court held that this letter was not the type of information "reasonably relied upon by experts," as required by Rule 703: (1) Dr. Schleinkofer was not Mr. Gong's treating physician at the time he developed the perforated ulcer; (2) the source of the information Dr. Schleinkofer conveyed in the letter was unknown; (3) the letter was written for the purpose of enabling Mr. Gong to obtain employment benefits; and (4) the letter was not included in Mr. Gong's medical chart for the purpose of rendering care and treatment. Memorandum Opinion and Order, No. 87 C 6680 at 7–8, 1989 WL 13202, (February 10, 1989).

On appeal, the plaintiff renews her contention that the letter should have been admissible as a basis for her medical expert's opinion under Rule 703. The threshold inquiry, then, is whether this letter is the type of information "reasonably relied upon by experts."

To support this proposition, plaintiff relies on *United States v. Bramlet*, 820 F.2d 851 (7th Cir.), *cert. denied*, 484 U.S. 861, 108 S.Ct. 175, 98 L.Ed.2d 129 (1987). In *Bramlet*, a psychologist testifying as an expert witness was allowed to base his opinion regarding the sanity of the defendant on observations recorded in staff reports of personnel at the Medical Center for Federal Prisoners. *Id.* at 856. The court held that the observations of these staff personnel were the type of information reasonably relied upon by experts. *Id.* It is not clear from the opinion whether the actual documents themselves were shown to the jury, but the court did allow the doctor "to summarize and draw conclusions from [the] notes and reports." *Id.; see also United States v. Lawson*, 653 F.2d 299, 301–02 (7th Cir.1981) (holding essentially the same as *Bramlet* on very similar facts), *cert. denied*, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982).

We find *Bramlet* distinguishable from the situation at issue here. In *Bramlet*, the expert was relying on *"recorded observations* of hospital staff members" at a facility to which the defendant had been ordered to undergo psychiatric evaluation. 820 F.2d at 856 (emphasis supplied). By contrast, the information sought to be relied on here is merely a conclusory statement, made by a doctor who was not the treating physician at the time of the illness in question, for the presumed purpose of obtaining employment disability benefits. The likely source of the information was the decedent himself. There is no indication that Dr. Schleinkofer had any personal knowledge of the circumstances relating to the perforated ulcer. In applying the requirement of Rule 703 that the information forming the basis of the expert's opinion be "of a type reasonably relied upon by ex-

der, No. 87 C 6680 at 7, 1989 WL 13202 (February 10, 1989).

perts," " 'the trustworthiness of the underlying data is not irrelevant.' " *Barrel of Fun, Inc. v. State Farm Fire & Cas. Co.*, 739 F.2d 1028, 1033 (5th Cir.1984) (citation omitted). Given the obvious concern over the trustworthiness of a statement made under circumstances such as these, we cannot say that the district court abused its discretion in preventing the plaintiff's medical expert from reading from Dr. Schleinkofer's letter or otherwise stating that his opinion was based on the letter.[3]

■ We also note that, even assuming that the letter was considered the type of evidence reasonably relied upon by experts, Rule 703 does not automatically mean that the *information itself* is independently admissible in evidence. *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1270 (7th Cir.1988). While Rule 703 entitles experts to base their opinion on such information, the rule does not address the admissibility of the underlying information. *Id.* In *Nachtsheim,* this court adopted the view that Rule 703 *generally* permits experts to state the underlying basis of their opinions (if the information is of the type reasonably relied upon by experts), but that the under-

lying information still is subject to exclusion under the balancing test of Rule 403. *Id.* at 1270–71.

2. Rule 803(4)

■ For similar reasons, the plaintiff's contention that the letter should have been admitted under the Rule 803(4) hearsay exception for statements made for purposes of medical diagnosis or treatment must fail. The rationale behind Rule 803(4) is that a patient's self-interest in promoting the cure of his own medical ailments guarantees the reliability of statements the patient makes for purposes of diagnosis or treatment. *See United States v. Iron Shell,* 633 F.2d 77, 83–84 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). In *Cook v. Hoppin,* 783 F.2d 684, 690 (7th Cir.1986), this court stated that the test for determining whether statements relating to the cause of an injury are admissible under Rule 803(4) is "whether such statements are of the type reasonably pertinent to a physician in providing treatment."[4] In his treatise, Judge Weinstein suggests that the test for admissibility of statements under Rule 803(4)

---

**3.** *See Ricciardi v. Children's Hosp. Medical Center,* 811 F.2d 18, 20, 24–25 (1st Cir.1987) (district court did not abuse its discretion in prohibiting plaintiff's medical expert from relying on consulting doctor's handwritten note in a medical chart that described accidental episode that arguably caused plaintiff's injury; consulting doctor did not have personal knowledge of the incident in question and could not recall specifically where he obtained the information he recorded in the note); *see also United States v. Grey Bear,* 883 F.2d 1382, 1392–93 (8th Cir.1989) (Rule 703 does not allow medical expert to "circumvent the rules of hearsay" by stating merely that the opinions of two other doctors, who were not present, agreed with his own), *cert. denied,* —— U.S. ——, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990); *Faries v. Atlas Truck Body Mfg. Co.,* 797 F.2d 619, 624 (8th Cir.1986) (expert opinion that was based on information provided by an interested witness was not sufficiently reliable under Rule 703); *In re Agent Orange Prod. Liab. Litig.,* 611 F.Supp. 1223, 1243–47 (E.D.N.Y.1985) (medical expert's opinion on causation based on self-serving symptom checklists prepared by plaintiffs would not be admissible under Rule 703 because no expert would reasonably rely on such information), *aff'd,* 818 F.2d 187 (2d Cir.1987), *cert. denied,* 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 932

(1988). *But cf. Manko v. United States,* 636 F.Supp. 1419, 1426 (W.D.Mo.1986) (expert's reliance upon administrative claim forms in determining cause of disease upheld because administrative claim forms were already admitted into evidence and were held to be the type of information reasonably relied upon by epidemiologists in forming an opinion).

**4.** We are aware that Rule 803(4) does allow the admission of statements made for the purpose of medical diagnosis as well as treatment. As Judge Weinstein notes:

Rule 803(4) rejects the distinction between treating and nontreating physicians because, as a practical matter, the advisory committee found that jurors do not distinguish between facts admitted for their truth and facts revealed as the basis for the expert's opinion. Moreover, as a matter of policy, a fact reliable enough to serve as the basis for a diagnosis is also reliable enough to escape hearsay proscription. The test for statements made for purposes of medical diagnosis under Rule 803(4) is the same as that in Rule 703—is this particular fact one that an expert in this particular field would be justified in relying upon in rendering his opinion?

4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 803(4)[01], at 803–146 (1988).

**1274**

should be the same as under Rule 703—whether an expert in the field would be justified in relying upon this statement in rendering his opinion. *See* 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 803(4)[01], at 803–146 to 803–147 (1988). Under this standard, this post-occurrence statement cannot be admitted. The statement does not reveal symptoms, objective data, surrounding circumstances or any similar *factual* data that a reasonable physician would consider relevant in the treatment or even diagnosis of a medical condition. Rather, it expresses a patient's [5] *conclusion* as to the appropriate medical diagnosis—hardly a matter upon which an expert in the field could rely in rendering an opinion. Thus, we conclude that there was no abuse of discretion in the district court's refusal to admit the letter under Rule 803(4).

### 3. Admissibility for purposes of impeaching Dr. Schleinkofer

■ The plaintiff also sought to introduce the letter to impeach the videotaped deposition testimony of Dr. Schleinkofer. The doctor had given deposition testimony on behalf of the plaintiff in April 1988, and this videotaped deposition was played for the jury during the trial. During the defendant's videotaped cross-examination of Dr. Schleinkofer, the doctor had testified that he could not say within a reasonable degree of medical certainty that the ulcer was caused by prednisone. On redirect examination, the plaintiff's counsel had shown Dr. Schleinkofer the letter and asked him whether he authored the letter, to which the doctor responded "yes." Counsel then immediately moved on to the discussion of another topic without asking the doctor any questions about the content of the letter or the alleged inconsistency between the statement in the letter that Mr. Gong's ulcer was "due to prednisone" and the doctor's response on cross-exami-

nation that he could not say whether the ulcer was caused by prednisone.

The videotaped deposition was shown to the jury during trial on the morning of September 14, 1988. That afternoon during trial, plaintiff's counsel sought to introduce the letter into evidence to impeach the videotaped testimony of Dr. Schleinkofer. The district court sustained an objection to admission of the letter on the ground that plaintiff's counsel had failed to lay a proper foundation for its introduction. The court explained that counsel had failed in this regard by neglecting to ask the witness any questions about the contents of the letter or to give the witness a chance to explain the circumstances in which he wrote the letter.

Under the circumstances presented here, we do not believe that the district court abused its discretion in concluding that plaintiff's counsel did not lay a sufficient foundation for admission of the letter for purposes of impeaching Dr. Schleinkofer. "A trial court has broad discretion in controlling the mode and order of presenting evidence." *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1276 (7th Cir.1988). Here, counsel for the plaintiff merely elicited the witness' admission that he authored a letter and then proceeded to another topic without establishing the significance of the letter or affording the witness an opportunity to explain the alleged inconsistent statement in the letter. We agree with the district court's assessment that counsel for the plaintiff "in fact did not use [the letter] to impeach [Dr. Schleinkofer]" and failed to "pursue the matter." Tr. at 346. Given the potential prejudicial effect of allowing the admission of the letter for impeachment purposes at a time when the witness was unavailable to explain the alleged inconsistency or to be examined by the defendant concerning the contents of the letter, the district court acted within its discretion in refusing to admit the letter.[6]

---

**5.** Although the source of the statement in the doctor's letter never was identified explicitly, it makes sense *for purposes of Rule 803(4)* ("statements made for purposes of medical diagnosis or treatment") to assume that Mr. Gong or

someone acting on his behalf was the party who made the statement to Dr. Schleinkofer.

**6.** In *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1275–76 (7th Cir.1988), this court upheld a similar exercise of discretion by a

### 4. Argument that the letter already was admitted into evidence

Finally, the plaintiff argued that the defendant already had stipulated to the admissibility of the letter because the letter was part of the parties' "joint exhibit" number 6, described in the schedule of exhibits as the "[c]omplete office chart of Dr. Robert M. Schleinkofer." Appellant's Br., App. I. The defendants objected on the ground that they had stipulated only to the authenticity of the joint exhibits, but not to their admissibility in evidence. The district court agreed with the defendants and sustained the objection.

The plaintiff's argument on this point is without merit. Although the defendant stipulated to "the authenticity" of the joint exhibits, it expressly reserved the right to question "what exhibits shall be submitted to the jury." Appellant's Br., App. I; Appellee's Br., Supp.App. There are no other stipulated terms regarding the joint exhibits, and there is no indication that the defendants stipulated to the admissibility of the joint exhibits. The district court did

district court. In that case, a products liability action that arose from a plane crash, the plaintiffs sought to admit a letter written by a vice president of the aircraft company to the National Transportation Safety Board. An attachment to the letter identified eight accidents involving similar conditions to those in the plaintiffs' action. The plaintiffs sought to introduce the letter to impeach the testimony of the systems design manager of the company, who had testified that he was aware of only one other accident. The letter indicated that a copy had been sent to the design manager. The plaintiffs did not, however, attempt to introduce the letter during the design manager's testimony. Instead, they attempted to introduce the letter after the design manager had been excused as a witness and after the defense had rested its case. The district court excluded the letter for purposes of impeachment as unfair because the witness had not been given an opportunity to explain the alleged inconsistency and was now unavailable. Although the plaintiffs argued that they had attempted to impeach the witness with the document, the court of appeals rejected that argument because, although counsel had asked the witness if the witness had seen the letter, counsel failed to pursue the matter when an objection was sustained to the form of the question regarding whether the witness had seen the letter. *Id.* at 1276 n. 18. The situation in *Nachtsheim* parallels the perfunctory manner in

not abuse its discretion in rejecting the plaintiff's argument in this regard.

### B. *Refusal to Bar Expert Testimony*

■ On the morning of Monday, September 19, 1988, Dr. Frank Byrne, one of Mr. Gong's treating physicians, was scheduled to testify. Moments before the trial was to resume, counsel for the plaintiff made an oral motion to bar the testimony of Dr. Byrne on the ground that the doctor had engaged in improper *ex parte* communication with the defendant and the defendant's attorney in the absence of the plaintiff or her attorney. Tr. at 713–14. The plaintiff's counsel alleged that such communication constituted a violation of the physician-patient privilege under Illinois law, as set forth in *Petrillo v. Syntex Laboratories, Inc.,* 148 Ill.App.3d 581, 102 Ill.Dec. 172, 499 N.E.2d 952 (1986), *cert. denied,* 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987). Because this motion was presented at approximately 10:00 a.m. on Monday morning, September 19, 1988, just as the court was prepared to bring the jury into the courtroom to resume trial, the court

which the alleged impeachment evidence was raised in this case.

We also note that the plaintiff has not specifically argued that the letter was admissible under Rule 613(b) as extrinsic evidence of a prior inconsistent statement. Even assuming that the issue were before us under Rule 613(b), we could not conclude that Dr. Schleinkofer properly was given an opportunity to "explain or deny the statement" within the meaning of the Rule. *See Lexington Ins. Co. v. Cooke's Seafood,* 835 F.2d 1364, 1369 (11th Cir.1988) (suggesting that as a foundational requirement under Rule 613(b), the witness must be given the opportunity to explain or deny the *substance* of the statement, rather than just the mere fact that the witness made the statement). Although we are aware of authority for the proposition that it is not essential that the *proponent* of the inconsistent statement be the one to afford the witness the opportunity to explain or deny the statement, *see, e.g., Wammock v. Celotex Corp.,* 793 F.2d 1518, 1521–23 & n. 3 (11th Cir.1986); 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 613[05], at 613–33 (1988); Rule 613(b) (Notes of Advisory Committee on Proposed Rules), under the facts of this case, it would not be in "the interests of justice," Fed.R.Evid. 613(b), to place the burden upon the defendant to interrogate the witness when the plaintiff had not even indicated by her curt use of the letter that she intended to impeach the witness.

stated it would not hear the motion. The court reminded the plaintiff that it had requested that all motions be presented at 9:45 a.m. in order to avoid taking jury time. When the court asked counsel why he had failed to present the motion earlier, counsel replied that he did not know that Dr. Byrne was going to appear as a witness for trial. Tr. at 714. The court then reminded counsel that it had been announced in open court on Thursday of the previous week, see Tr. at 554, that Dr. Byrne would testify and noted that, on the basis of such notice, counsel could have brought the motion earlier. The court thus refused to hear counsel's motion as untimely.

The plaintiff contends that the district court erred in refusing to hear the oral motion to bar the testimony of Dr. Byrne. Although in a posttrial motion and *on appeal* counsel argues that the reason the motion was not timely made was because the *ex parte* communication had occurred just earlier that morning at 9:20 a.m., counsel did not make this clear to the court at the time the motion was made. Instead, counsel argued that the motion was brought at the last minute because counsel was unaware that Dr. Byrne was going to appear as a witness at trial. Tr. at 714. As noted by the district court, *id.*, it had been announced in open court on Thursday of the previous week that Dr. Byrne would testify on Monday. *See* Tr. at 554.

Although the district court refused to hear counsel's argument to bar Dr. Byrne's testimony, it did grant counsel wide latitude in cross-examining Dr. Byrne concerning any alleged *ex parte* communications. From this cross-examination, it is clear that the alleged *ex parte* communication to which counsel was referring occurred several months before trial on April 20, 1988, at Dr. Byrne's deposition. *See* Tr. at 752–54. It also is clear from the cross-examination that plaintiff's counsel learned of this alleged *ex parte* communication on that date. Because the plaintiff had ample notice of both the alleged *ex parte* communication and that Dr. Byrne would be called as a witness, we cannot say that the district court abused its discretion in refusing to hear counsel's last-second motion. *Cf.*

*United States v. Doerr,* 886 F.2d 944, 970 (7th Cir.1989) ("'A trial court has discretion when considering an untimely ... motion and a reviewing court may disturb the trial court's decision only for clear error.'") (quoting *United States v. Hamm,* 786 F.2d 804, 806 (7th Cir.1986)).

### C. Alleged Instructional Error Regarding the Wrongful Death and Survival Claims

The instructions submitted to the jury did not expressly distinguish between the plaintiff's "survival" claim for the injuries allegedly caused by the defendant's actions before the decedent's death and her "wrongful death" claim, which alleged that the decedent's death approximately eighteen months after the initial injury also was caused by the defendant's negligence. Pursuant to instructions *tendered by the plaintiff's counsel,* the jury was instructed as follows:

The plaintiff has the burden of proving each of the following propositions:

First, that the defendant acted or failed to act in one of the ways claimed by the decedent as stated to you in these instructions and that in so acting, or failing to act, the defendant was negligent;

Second, that the plaintiff's decedent was injured *and* died;

Third, that the negligence of the defendant was a proximate cause of injury *and* death to the decedent.

If you find from your consideration of all the evidence that *each* of these propositions has been proved, *then your verdict should be for the plaintiff.* On the other hand, if you find from your consideration of all the evidence that *any* of these propositions has not been proved, then your verdict should be for the defendant.

R.128 (emphasis supplied); Tr. at 905–06.

Plaintiff's counsel desired that the verdict form consist of separate special interrogatories regarding the "survival" and "wrongful death" claims. To this end, counsel proffered a verdict form consisting of three special interrogatories. The form

asked the jury for a yes or no answer to each of the following questions:

[1] Was the defendant, EDWARD A. HIRSCH, negligent in one or more of the particulars alleged?

[2] If so, relative to the Survival Action, was that negligence, in whole or in part, a proximate cause as that term has been defined by the court, of any injury and subsequent damage to RAY F. GONG, deceased?

[3] If you find the defendant negligent, relative to the Wrongful Death Action, did that negligence, in whole or in part, contribute to proximately cause as that term has been defined by the court, the death of RAY F. GONG, deceased?

R.126. The district court rejected this tendered verdict form on the ground that the jury would not know what was meant by the reference to the terms "survival" and "wrongful death," *see* Tr. at 826, which had not been defined elsewhere in the agreed instructions.

Instead, the district court accepted the defendant's tendered verdict forms, which consisted of two general verdict forms and a special interrogatory. The two general verdict forms, printed on separate pages with signature lines for the jurors, stated as follows: "We, the jury, find for the defendant and against the plaintiff"; and "We, the jury, find for the plaintiff and against the defendant." R.127; R.130; Tr. at 906. The special interrogatory, which also was printed on a separate page, stated as follows:

If you find for the plaintiff and against the defendant, you should answer the following interrogatory. If you find for the defendant and against the plaintiff, you should not answer this interrogatory.

Was the negligence of the defendant a proximate cause of the death of Ray F. Gong, Deceased?

ANSWER: YES___ NO___

R.130; Tr. at 906–07.

■ The plaintiff argues that the jury instructions failed to distinguish between the wrongful death and survival claims and thus did not permit the jury to decide these issues separately. She further contends that the district court's refusal to accept the plaintiff's tendered special verdict form perpetuated this ambiguity and confused the jury. In short, she asserts that the combined effect of these alleged instructional errors denied her a fair trial.

We agree with the plaintiff's contention on appeal that the liability instruction regarding the elements of the plaintiff's case was confusing because it did not clearly inform the jurors that they could find the defendant liable for the decedent's personal injuries even if they did not conclude that the defendant's negligence was a proximate cause of the decedent's death. By use of the conjunctive "and" in the liability instruction, the jury may have been misled to believe they had to find that the defendant's negligence was the proximate cause of *both* the injury and death of Mr. Gong before they could find for the plaintiff.

The problem here, however, is that this erroneous instruction was tendered *by counsel for the plaintiff.* In civil cases, a plaintiff who merely fails to object to a faulty instruction (much less, a plaintiff who tenders one) must live with the effect of that instruction. *See Sims v. Mulcahy,* 902 F.2d 524, 535–36 (7th Cir.1990) (" 'in civil cases a plain error doctrine is not available to protect parties from erroneous jury instructions to which no objection was made at trial' ") (quoting *Deppe v. Tripp,* 863 F.2d 1356, 1362 (7th Cir.1988)); *Coulter v. Vitale,* 882 F.2d 1286, 1289–90 (7th Cir.1989); *Bob Willow Motors, Inc. v. General Motors Corp.,* 872 F.2d 788, 795 (7th Cir.1989). Thus, the plaintiff has no claim that the giving of the liability instruction constituted reversible error.[7]

■ The plaintiff also contends that the district court erred in submitting the

---

**7.** The fact that the plaintiff's counsel tendered a verdict form with special interrogatories regarding the "wrongful death" and "survival" action can in no respect be considered an "objection" to the faulty liability instruction that the plaintiff tendered.

defendant's tendered general verdict with special interrogatory rather than the plaintiff's verdict form containing three special interrogatories. The district court's decision not to give the plaintiff's requested special interrogatories will be reversed only if the refusal was an abuse of discretion. *See Gillam v. J.C. Penney Co.*, 341 F.2d 457, 460 (7th Cir.1965); *Cf. United States Fire Insurance Co. v. Pressed Steel Tank Co.*, 852 F.2d 313, 316 (7th Cir.1988) (abuse of discretion standard governs district court's formulation of special verdict questions). *See generally* Fed.R.Civ.P. 49. Moreover, we view the instructions as a whole to determine "whether the jury received 'the correct message.'" *Id.* (quoting *Wilk v. American Medical Ass'n*, 719 F.2d 207, 218 (7th Cir.1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984)). If the jury received an incorrect message, responsibility for that incorrect message rests with the plaintiff's counsel, who tendered a faulty liability instruction. The verdict form (consisting of three special interrogatories) tendered by the plaintiff was objectionable for at least two reasons: (1) it contained the terms "Wrongful Death Action" and "Survival Action," which were potentially misleading to jurors and which had not been defined elsewhere in the instructions; and (2) the inclusion of separate special interrogatories asking (a) whether the defendant's negligence was "a proximate cause ... of any injury and subsequent damage to [the decedent]" and (b) whether the defendant's negligence "contribute[d] to proximately cause ... the death of [the decedent]" was incompatible with the plaintiff's liability instruction, which told the jury that it should render a "verdict" "for the plaintiff" or "for the defendant" depending on whether an entire set of propositions had been proved. Because the use of the plaintiff's tendered verdict form, in conjunction with the plaintiff's other tendered instructions, would have posed a legitimate risk of juror confusion, we cannot say that the district court abused its discretion in refusing to use this verdict form.

### D. *Remaining Contentions*

The plaintiff raises several other contentions. After a thorough review of the record, we determine that these remaining contentions are without merit. Extended elaboration is not necessary.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.