In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-1393

THOMAS WAYNE LOVELACE,

*Plaintiff-Appellant,*

*v.*

TODD MCKENNA, LES YEPSEN, and DARRIN SMITH,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 13 CV 04299 — **Iain D. Johnston**, *Magistrate Judge.*

ARGUED MARCH 28, 2018 — DECIDED JULY 3, 2018

Before EASTERBROOK, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge*. Thomas Lovelace alleges that correctional officers at Dixon Correctional Center severely beat him while he was transferred between housing units. Lovelace sued the officers in federal court, claiming they used excessive force in violation of the Eighth Amendment and bringing additional state-law claims. After a four-day trial in January 2017, a jury returned a verdict in favor of the officers on all of Lovelace's claims. Now, Lovelace argues that the district court

committed two evidentiary errors that affected the outcome of the trial. Because the district court properly exercised its discretion, we affirm.

## I. BACKGROUND

On November 6, 2011, Lovelace and a fellow inmate at Dixon Correctional Center fought over colored pencils. As a result, correctional officers handcuffed Lovelace and walked him to a transportation van to be taken to the segregation unit. Once in the van, Lovelace kicked his foot through its window.

During his case-in-chief, Lovelace offered his version of what happened next. He testified that Officers Todd McKenna and Les Yepsen carried him out of the van and slammed his face into the ground. Lovelace was then placed inside another van, where officers continued to beat him. Once at the segregation unit, Officer Darrin Smith approached Lovelace and punched him in the ribs. After placing Lovelace in a cell, correctional officers removed his clothes and continued the assault. They then left Lovelace for several hours without clothing or bedding.

Lovelace asserted that the beating resulted in long-lasting injuries. He testified that his eye was swollen shut and blackened, that his ribs were bruised, and that he had back pain. He presented evidence from his medical providers to corroborate his story. A nurse's outpatient notes from November 6, 2011, indicate that Lovelace self-reported that he needed pain medication and that he had a bruise. The next day, the nurse's examination revealed tenderness on the right side of Lovelace's face. Lovelace also reported back pain, and the nurse gave him ibuprofen. On November 8, a physician's assistant increased the ibuprofen dosage after Lovelace reported that

he was in a fight and complained of rib and back pain. Over the next couple months, Lovelace continued to report back pain, and he continued to receive ibuprofen or Tylenol.

While this evidence suggested that Lovelace had been injured, none of it specifically indicated that a beating by correctional officers was the cause. So Lovelace also called Dr. Elaine Bochenek—a psychologist who treated Lovelace at Dixon on January 4, 2012—to testify. Lovelace stated that he told Dr. Bochenek about the "events of November 6, 2011, so that she could understand and treat [his] frustration." (R. 229 at 40.) Dr. Bochenek's note from January 4 indicates that Lovelace "discussed his frustration with, what he perceives of as, the lack of attention to the grievance he filed 'when the C/O's [correctional officers] kicked my ass.'" (Appellee's App. at A14.) Before admitting this note as a trial exhibit, the district court redacted Lovelace's statement—"the C/O's kicked my ass"—after concluding it was inadmissible hearsay. Similarly, the court permitted Dr. Bochenek to read an unredacted version of the note to refresh her memory, but instructed her not to relay Lovelace's statement to the jury when testifying. Accordingly, Dr. Bochenek testified that Lovelace sought treatment because he was frustrated over "not having received any response to a grievance he filed about being mistreated by prison staff." (R. 229 at 222.)

Lovelace's final witness was Daniel Sullivan, a fellow inmate and Lovelace's only witness to the alleged beating in the segregation unit. Sullivan was unavailable for trial, so designated portions from his deposition were read to the jury. Before reading the substantive portions of the deposition, the district court explained to the jury that a deposition is "the sworn testimony of a witness taken before trial," and then

read the portion of Sullivan's deposition where Sullivan acknowledged he swore to tell the truth. (R. 230 at 34–35.) The court also read part of Sullivan's response when he was asked whether there was any reason he could not tell the truth— "No"—but it did not read, over Lovelace's objection, Sullivan's subsequent elaboration:

> I just hope I don't get in trouble from IDOC [Illinois Department of Corrections], you know. This is my fifth time in IDOC. I have been here quite a bit since I was an adult. I know they kind of like to stick together and cover things up, and I don't want—I am supposed to get transferred back to Dixon, and I don't want it to affect me going back there.

(R. 196-1 at 5.) The substantive portions of Sullivan's deposition somewhat corroborated Lovelace's case: Sullivan testified that he saw correctional officers, including McKenna and Yepsen, beating Lovelace as they moved Lovelace to a segregation cell. Sullivan could not see Lovelace's cell from his location, but he heard sounds after the cell door was closed and saw officers carry Lovelace's clothes away.

After Lovelace's case-in-chief, McKenna, Yepsen, and Smith each took the stand. The defense argued that the officers did not beat Lovelace and sought to discredit his account. For example, the officers maintained that the beating did not occur because Lovelace's Dixon medical notes would have mentioned it if it had. Indeed, one of Lovelace's treating nurses testified at trial that if Lovelace had complained about being beaten by correctional officers, she would have reflected that complaint in her notes.

Lovelace attempted to rebut the defense's theory of the case by arguing that the Dixon medical providers had an incentive to leave a beating by correctional officers out of their notes: the officers were responsible for protecting the medical providers day in and day out. Ultimately, though, the jury returned a verdict in favor of the officers on all of Lovelace's claims. Lovelace now appeals, arguing that the district court reversibly erred when it excluded Lovelace's statement in Dr. Bochenek's note and when it excluded Sullivan's deposition statements that elaborated on his ability to testify truthfully.

## II. ANALYSIS

We review a district court's evidentiary rulings for an abuse of discretion. *Flournoy v. City of Chicago*, 829 F.3d 869, 876 (7th Cir. 2016). A district court abuses its discretion when it bases its decision on an erroneous conclusion of law or clearly erroneous factual findings, when the record contains no evidence from which the court could have rationally made its decision, or when its decision is clearly arbitrary. *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 565 (7th Cir. 2018). In this case, the district court did not abuse its discretion in excluding either of the statements Lovelace raises as issues on appeal.

A. *The district court did not abuse its discretion in excluding Lovelace's statement to Dr. Bochenek.*

An out-of-court statement offered to prove the truth of the matter asserted is generally inadmissible hearsay. *Flournoy*, 829 F.3d at 876; Fed. R. Evid. 801(c). *But see, e.g.*, Fed. R. Evid. 803 (outlining some exceptions under which hearsay may be admissible). Conversely, an out-of-court statement is not hearsay—and is generally admissible—if it is *not* offered to prove

the truth of the matter asserted. Whether a particular out-of-court statement is inadmissible hearsay "will most often hinge on the purpose for which it is offered." *United States v. Linwood,* 142 F.3d 418, 425 (7th Cir. 1998).

The district court redacted Lovelace's statement—"the C/O's kicked my ass"—from Dr. Bochenek's note before admitting the note into evidence, and instructed her not to read the statement to the jury during her testimony. Lovelace contends that this was an abuse of discretion because his statement was not being offered for its truth. He posits that it was instead "offered as evidence that [he] sought and received medical treatment from a psychologist in connection with the beating," which would be relevant to damages. (Appellant's Br. at 13, 14.) The district court heard argument on this point, and it concluded that the statement was not necessary to prove damages and that Lovelace intended to offer it for its truth. Our standard of review gives the district court—the court uniquely familiar with the case and the parties—leeway in deciding whether a statement is being offered for its truth. We are not convinced the district court abused its discretion when making that determination in this case.[1]

In the alternative, Lovelace contends that the statement was nonetheless admissible under Federal Rule of Evidence 803(4), which provides in relevant part that a hearsay state-

---

[1] Moreover, some of Lovelace's arguments on appeal intimate that he sought to introduce the statement—at least in part—for its truth. For example, when arguing that the exclusion of the statement caused him prejudice, Lovelace states that "[t]he court's decision to redact the statement prevented [me] from presenting a more complete version of what happened on November 6." (Appellant's Br. at 16.)

ment is admissible if it "is made for—and is reasonably pertinent to—medical diagnosis or treatment." Fed. R. Evid. 803(4)(A). The district court, relying on Dr. Bochenek's testimony, concluded that Lovelace's statement did not fall within the exception because it was not made for medical diagnosis or treatment. Lovelace's statement he was frustrated with the grievance process was made for diagnosis or treatment, but his statement regarding the catalyst of that grievance—"the C/O's kicked my ass"—was not. (R. 228 at 3–7; R. 185-2, Bochenek Dep., at 89 ("[H]e's not talking about any symptoms of mental health problems related to being assaulted. He's talking about his frustration with not having—having a response to his grievance about the situation.").)

Lovelace argues that the district court abused its discretion because treating a mental health issue like frustration is aided by an understanding of its cause. To be sure, this is a rational proposition. But the district court was permitted to rely on Dr. Bochenek's assessment of what statements were made for medical treatment, and it did so. *See Gong v. Hirsch*, 913 F.2d 1269, 1273–74 (7th Cir. 1990) (noting that we should consider what an expert in the field would consider relevant in diagnosing and treating); *Cook v. Hoppin*, 783 F.2d 684, 690 (7th Cir. 1986) (crediting a physician's assessment of whether the statements made are the type "medical personnel generally rely on in making a diagnosis and providing treatment").

For these reasons, the district court did not abuse its discretion when redacting Lovelace's statement from Dr.

Bochenek's note and prohibiting Dr. Bochenek from reading it to the jury.[2]

B. *The district court did not abuse its discretion in excluding the portion of Sullivan's deposition testimony in which he elaborated on his ability to be truthful.*

Daniel Sullivan was Lovelace's only witness to the alleged beating at the segregation unit. At his deposition, Sullivan was asked if there was any reason that he wouldn't be able to tell the truth. He responded "No," but then continued on to say he was concerned his truthful testimony would result in IDOC officials retaliating against him by preventing his transfer back to Dixon. (*See* R. 196-1 at 5.) Sullivan posited that IDOC officials have a tendency "to stick together and cover things up." (*Id.*) The defense argued that all of Sullivan's response other than "No," should not be read to the jury because the statements were irrelevant, nonresponsive, and prejudicial. The district court seemingly agreed, striking the comments without explanation. Lovelace believes that the district court's decision to keep Sullivan's elaboration from the jury was an abuse of discretion that substantially prejudiced his case. We disagree.

Federal Rule of Evidence 403 provides that a court may exclude even relevant evidence if its probative value is sub-

---

[2] As explored at oral argument in this appeal, Lovelace's statement likely could have been admitted under Federal Rule of Evidence 801(d)(1)(B), which provides that prior consistent statements, under certain circumstances, are not hearsay. But Lovelace concedes that he did not raise Rule 801(d)(1)(B) in the court below or in this court, so it cannot serve as a basis for reversal.

stantially outweighed by dangers like unfair prejudice or confusion. Here, the risk that Sullivan's statements would have unfairly prejudiced the defendants outweighed any probative value the statements may have had. Indeed, Sullivan's comments may have given the jury reason to doubt the defense's contention that Sullivan fabricated his testimony to benefit Lovelace; why would a person fabricate a story to benefit another inmate at the risk of their own harm? But the jury already had reason to doubt the defense's contention: it heard on several occasions that Sullivan took an oath to tell the truth. Moreover, the prejudicial nature of the testimony is clear: Sullivan insinuated that Dixon officials conspire and retaliate together to "cover things up," and McKenna, Yepsen, and Smith were all Dixon officials. Thus, the risk that the jury would use Sullivan's comments against the defendants substantially outweighed any probative value the comments had.

For this reason, the district court did not abuse its discretion in excluding the portion of Sullivan's deposition testimony in which he elaborated on his ability to tell the truth.

### III. CONCLUSION

The district court did not abuse its discretion when it decided to exclude Lovelace's statement to Dr. Bochenek, nor did it abuse its discretion when it decided not to read a portion of Sullivan's deposition testimony to the jury. We therefore AFFIRM.