NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 28, 2020[*]
Decided May 29, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-3562

| | |
|---|---|
| RONALD BARROW,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | 3:14-CV-800-NJR-DGW |
| WEXFORD HEALTH SOURCES, INC.,<br>*et al.,*<br>    *Defendants-Appellees.* | Nancy J. Rosenstengel,<br>*Chief Judge.* |

**O R D E R**

Ronald Barrow, formerly an inmate at Menard Correctional Center, sued two prison doctors and their employer, Wexford Health Services, Inc., for deliberate indifference to his medical needs. After discovery, the district court entered summary judgment for Wexford, but several counts against the doctors proceeded to trial. The jury found in favor of the defendants, and Barrow appeals. We affirm in all respects.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

## Background

Barrow suffers from several chronic health conditions: hemorrhoids, rectal bleeding, chronic knee and shoulder pain, lower back pain, gastroesophageal reflux disease, and diverticulosis. At Menard, he received treatment for these conditions from two prison doctors employed by Wexford, the healthcare provider for Illinois prisons.

### 1.  Dr. Shearing

From October 15, 2012, to November 16, 2013, Barrow was treated by Dr. Robert Shearing, who at the time was the medical director at the prison. Until then, Barrow was taking Tramadol, an opioid painkiller, for his chronic back pain. Dr. Shearing became concerned about the high doses of Tramadol that Barrow was taking because chronic use of the drug is associated with tolerance, dependence, and addiction. The doctor reduced Barrow's dosage and ultimately switched him to amitriptyline, a non-narcotic drug. Barrow, however, told Dr. Shearing that amitriptyline was less effective and that his pain was worsening, not only in his back but also in his knee and shoulder. Barrow's prescription for amitriptyline ran out after three months, and Dr. Shearing did not refill it or order another pain medication. When Barrow again complained about his pain (but did not request a refill of amitriptyline), Dr. Shearing performed tests and determined that Barrow had a chronic condition with no acute cause. Again, he did not order a change in pain medication.

Dr. Shearing also treated Barrow for rectal bleeding and constipation, prescribing Konsyl or Fibercon—a switch from Metamucil. Barrow wrote letters to Dr. Shearing challenging the decision to take him off Tramadol and take him off Metamucil; the doctor explained that Tramadol was no longer recommended and that Konsyl and Fibercon contain the same active ingredient as the medication Barrow wanted.

### 2.  Dr. Trost

Dr. John Trost replaced Dr. Shearing as Menard's medical director in November 2013. In February 2014, after an appointment with Barrow, Dr. Trost reordered Konsyl and Fibercon for him. Dr. Trost attested that Barrow did not discuss pain at this appointment. (Barrow contends he did not have a chance.) Dr. Trost then evaluated Barrow for low back pain in September 2014 and prescribed Tylenol. But when Barrow's prescription ran out in early 2015, it was not refilled for four months.

In December 2015, Barrow wrote multiple letters to Dr. Trost and members of the prison's health care unit and complained to a nurse at sick call about ongoing pain, including back pain and rectal bleeding. In response, Dr. Trost ordered a muscle relaxant for back pain and ordered Tylenol, Fibercon, and Zantac; he also ordered an x-ray of Barrow's lumbar spine. When an outside doctor evaluated Barrow, he did not make any changes to Dr. Trost's treatment.

**Procedural History**

### 1.  Pretrial Proceedings

Barrow filed a complaint against Wexford, Dr. Shearing, Dr. Trost, other medical staff, and the warden; he alleged that they were deliberately indifferent to his medical conditions in violation of the Eighth Amendment. After threshold review, *see* 28 U.S.C. § 1915A, the district court allowed Barrow to proceed on six counts: Count 1 against Wexford for its alleged policy, custom, or practice of elevating "cost over care," and counts against Wexford, Dr. Shearing, and Dr. Trost for denying Barrow access to prescription medications (Count 2), and for providing inadequate treatment for his chronic back injury (Count 3), chronic rectal bleeding and diverticulosis (Count 4), chronic knee problem (Count 5), and shoulder pain (Count 6). Citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the court dismissed Barrow's claim that Wexford was vicariously liable for the providers' misconduct because municipal liability under § 1983 is possible only if the plaintiff's injury was caused by a policy, practice, or custom. The rule extends to private corporations such as Wexford when they operate as state actors. *See Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 789 (7th Cir. 2014); *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982).

After denying an early request, the district court recruited counsel for Barrow. But when the defendants moved for summary judgment, Barrow and his attorney disagreed on how to respond. Barrow moved to discharge counsel and proceed pro se. After warning Barrow that it would not recruit another attorney, the district court granted his request. Barrow then responded to the summary-judgment motion pro se.

The court granted the motion as to Wexford. It concluded that Barrow had pointed to no evidence of a policy or custom prioritizing cost over care and, again, that Wexford could not be liable on Barrow's claims related to specific treatment decisions made by the doctors, even if those defendants were individually liable. And, entering judgment for Dr. Trost on several counts, the district court explained that Barrow raised no dispute about whether Dr. Trost's decisions—including prescribing Tylenol and

ordering an x-ray and MRI—were the products of his medical judgment and, further, that Barrow had not put Dr. Trost on notice that his pain and other symptoms persisted despite the treatment.

The court concluded, though, that Barrow had presented sufficient evidence for a trial on the following issues: whether Dr. Shearing and Dr. Trost denied access to prescription medications (Count 2) and failed to provide adequate treatment for his chronic rectal bleeding and diverticulosis (Count 4); and whether Dr. Shearing denied adequate treatment for his chronic back injury (Count 3), chronic knee problem (Count 5), and shoulder pain (Count 6).

## 2. Trial

At the final pretrial conference on June 12, 2018 (six days before trial), Barrow was informed that former defendant Gail Walls—the nursing director-- and grievance officer Lori Oakley would not be available to testify at trial. The court ruled that Barrow could use Walls's deposition testimony as a substitute. Barrow expressed concerns but informed the court that he did not want another continuance.

At trial, the district court conducted the voir dire of potential jurors and allowed the parties to ask follow-up questions; the court denied one of Barrow's challenges for cause and granted the defendants' challenge. Then, the jury heard testimony from Barrow, Dr. Shearing, Dr. Trost, and other medical staff from Menard and Wexford. Barrow asked both Dr. Shearing and Dr. Trost about their treatment decisions and choices of medication, and they offered explanations similar to those they had provided at the summary-judgment stage. Dr. Shearing explained that he switched Barrow from Tramadol to amitriptyline because of public health warnings about the side effects of Tramadol, including dependency and increasingly high dosages. Dr. Trost explained that he considered Tylenol to be appropriate for Barrow's chronic pain. As to Barrow's rectal problems, both Dr. Shearing and Dr. Trost testified that Konsyl and Fibercon were considered just as effective as Metamucil. Dr. Trost further testified that Barrow had threated to sue him but that the threats did not influence his medical decision-making.

Barrow provided his own narrative testimony. He described his health conditions and testified that the doctor who succeeded Dr. Shearing and Dr. Trost provided treatment that was more effective. Barrow emphasized the pain he experienced while under the doctors' care.

On the last day of trial, Barrow moved for a mistrial, arguing that his trial was fundamentally unfair because the court refused to admit certain letters he had sent complaining about his care and because three witnesses were not available to testify, most notably Walls, the nursing director. Barrow also requested a missing-witness instruction, but the court denied it. The jury returned a verdict for the defendants, using forms that distinguished between the defendants but did not call for a separate deliberate-indifference finding for each medical condition, even though Barrow's complaint had split them into separate counts.

## Discussion

### 1. Pretrial Rulings

Barrow raises numerous issues on appeal. We start with his challenges against Wexford. Barrow first asks us to overrule circuit precedent and allow for corporations to be vicariously liable under § 1983 for their employees' unlawful acts. Barrow has preserved this issue, but this case does not compel us to revisit it. *See Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 522 (7th Cir. 2019); *Shields*, 746 F.3d at 789–96.

Neither does Barrow persuade us that he was entitled to a trial on his claim that Wexford has a policy of prioritizing cost savings over patient health. Barrow argues that Wexford documents, including its handbook and its practice of "collegial review" (by which treating physicians consult with non-treaters about treatment options), demonstrate its focus on cost minimization. But "administrative convenience and cost may be, in appropriate circumstances, *permissible factors* for correctional systems to consider in making treatment decisions." *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011). The constitution is violated only when harm occurs because administrative convenience is considered to the exclusion of reasonable medical judgments. *Id*. Thus, Barrow needed evidence not only that Wexford prioritizes cost savings, but that he was injured by treatment decisions that were cost-driven. But Barrow had none.

Barrow also argues that the district court erred in entering summary judgment for Dr. Trost on his claims that the doctor was deliberately indifferent to his back, knee, and shoulder pain (Counts 3, 5, and 6). But Barrow merely repeats the allegations of his complaint and states: "Dr. Trost was on notice … and delayed and/or denied adequate treatment." Underdeveloped arguments that do not engage with the district court's reasoning are waived. *See Klein v. O'Brien*, 884 F.3d 754, 757 (7th Cir. 2018); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). Barrow fails to acknowledge the

evidentiary deficit that led to the entry of judgment for Dr. Trost on these counts, and so we say nothing further about them.

Barrow also argues that, before trial, the district court unfairly deprived him of access to discovery documents, impeding his ability to prepare for trial. We review the district court's discovery decisions for abuse of discretion. *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014). Barrow argues that he was not given access to key documents until the morning of trial. But, as the doctors note, although the district court granted their motion to preclude Barrow from retaining copies of policies and other documents in his cell, he reviewed them during discovery. The content was not a surprise, and he received copies to use at trial. Barrow has not explained how this procedure prejudiced him.

## 2. Trial

Barrow argues that numerous trial rulings and the alleged misconduct of the defendants' attorneys rendered his trial a "sham" and a deprivation of due process. He challenges the district court's management of the order in which witnesses appeared and the duration of examinations. But this is an issue of trial management that we leave to the district judge absent a showing of prejudice, *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015), and Barrow does not explain how he was harmed. He also argues that defense counsel acted in bad faith by failing to notify him that witnesses would be unavailable until shortly before trial. But Barrow waived this objection because, when asked at the pretrial conference, he responded, "no, I don't want another continuance. I want this over with, win or lose, so I can move on." *See Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 762 (7th Cir. 2016).

Barrow also takes issue with the court's management of jury selection, which we review for abuse of discretion. *Hollins v. City of Milwaukee*, 574 F.3d 822, 828 (7th Cir. 2009). He argues that he was denied a fair and impartial jury because the district court refused to let him ask questions, did not strike certain jurors for cause, and forced him to accept a juror with medical problems because he had used all his peremptory strikes. But parties to a civil case are not entitled to question jurors during voir dire. *See* FED. R. CIV. P. 47(a) ("The court may permit the parties or their attorneys to examine prospective jurors or may itself do so..."). Nor may parties demand that the judge ask specific questions, and the court has wide discretion to decide whether there is cause to excuse a potential juror. *See* 28 U.S.C. § 1870; *Marshall v. City of Chicago*, 762 F.3d 573, 578 (7th Cir. 2014). Barrow has not pointed to any decision that falls outside that discretion.

And again, he fails to explain any prejudice: The parties had an opportunity to ask follow-up questions, which Barrow declined, and he does not make any connection between the jury's composition and its eventual verdict.

Barrow next argues that the court abused its discretion by excluding letters Barrow wrote to his doctors and the health care unit. But the court reasonably determined that those letters were hearsay not subject to the exception for statements made for medical diagnosis or treatment under Federal Rule of Evidence 803(4). The letters did not describe physical symptoms or request care; they listed complaints about the doctors and Barrow's legal conclusions. For example, in one letter to Dr. Shearing, Barrow wrote: "I've attempted to work with you but it's clear you will follow Wexford's cost over care policy, therefore I've done all I can." The district court reasonably concluded that Barrow's statements did not merit a hearsay exception. *See Lovelace v. McKenna*, 894 F.3d 845, 849–50 (7th Cir. 2018).

Barrow also contends that improper comments by opposing counsel deprived him of a fair trial. But Barrow waived these arguments by failing to object at the time. *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 635 (7th Cir. 2018). And even if Barrow had contemporaneously objected, the challenged statements were not improper; they consist of accurate factual statements and references to the opioid epidemic that was supported by trial testimony.

Finally, Barrow argues that the district court committed multiple errors with respect to the jury instructions. The district court has "substantial discretion" over the jury instructions as long as the instructions, taken as a whole, "completely and correctly state[] the law." *Green v. Junious*, 937 F.3d 1009, 1015 (7th Cir. 2019).

Barrow contends that the court erroneously refused an instruction allowing the jury to infer that the testimony of Menard witnesses who did not appear would have been unfavorable to the defendants. *See* Seventh Circuit Pattern Civil Jury Instruction 1.19 (rev. 2017); *Rainey v. Taylor*, 941 F.3d 243, 251 (7th Cir. 2019). And here, the district court identified substitute witnesses for the nursing director (Walls) and Barrow's grievance officer, Oakley, and it gave Barrow the option of admitting the nursing director's deposition testimony (which he declined after the court denied his request to admit her testimony from a different case). And a substitute witness was not necessary for the third witness—a doctor whose purpose was only to lay foundation for a document that was admitted anyway. Further, Barrow made no showing that

Dr. Shearing or Dr. Trost could control whether these witnesses appeared at trial. The district court did not abuse its discretion.

Second, Barrow argues that the district court erred by combining the counts together in the jury instructions and by using verdict forms (one for each doctor) that did not call for separate findings on the doctors' responses to each medical condition. The jury instructions, however, listed each medical condition and explained that the jury was supposed to assess each one. That approach was neither misleading or prejudicial and was therefore permissible. *See United States v. Anzaldi*, 800 F.3d 872, 880 (7th Cir. 2015). The same is true of the other alleged errors in the jury instructions that Barrow identifies, none of which rendered the instructions inaccurate or misleading.

Barrow argues, finally, that cumulative errors made the trial fundamentally unfair and that he is therefore entitled to a new trial. But he has not demonstrated any error, much less an accumulation of errors great enough to require another trial. *See United States v. Powell*, 652 F.3d 702, 706 (7th Cir. 2011).

We have considered Barrow's other arguments, including those about the conduct of the defendants' attorneys in discovery and at trial, and none has merit.

AFFIRMED