2006 ND 32

Anthony L. DAVIS, Plaintiff, Appellant, and Cross–Appellee

v.

Keith KILLU, M.D., Philip Hershberger, M.D., Triad Hospitals, Inc., Quorum Health Services, Inc., QHG of Minot, Inc., UniMed Medical Center–St. Joseph's Hospital, and Minot Health Services, Inc., dba Medical Arts Clinic, Defendants and Appellees

Philip Hershberger, M.D., Defendant, Appellee, and Cross–Appellant.

No. 20040301.

Supreme Court of North Dakota.

Feb. 2, 2006.

Wade G. Enget (argued), Schulte & Enget, Stanley, N.D., and Tom P. Slorby (appeared), Slorby Law Office, Minot, for plaintiff, appellant, and cross-appellee.

John C. Kapsner, Vogel Law Firm, Bismarck, for defendants and appellees.

Tracy Vigness Kolb (argued) and Lance D. Schreiner (appeared), Zuger Kirmis & Smith, Bismarck, for defendant, appellee, and cross-appellant.

CROTHERS, Justice.

[¶ 1] Anthony L. Davis appealed from a judgment entered on a jury verdict dismissing his medical malpractice action against Dr. Keith Killu, Dr. Philip Hershberger, and several corporate health care providers. Hershberger cross-appealed from the judgment. We conclude the trial court's evidentiary rulings challenged by Davis do not constitute reversible error, rendering it unnecessary for us to address

the issue raised by Hershberger on the cross-appeal. We affirm.

I

[¶ 2] In May 2000 Davis complained to his urologist at the Medical Arts Clinic in Minot about pain in his right ankle and the urologist referred Davis to Killu, an internal medicine physician. After conducting tests on Davis at the UniMed Medical Center on May 24, 2000, Killu diagnosed Davis as having cellulitis, with possible osteomyelitis, and admitted him to the hospital for intravenous antibiotic treatment. Despite the treatment, Davis's left ankle was becoming more swollen and sore, and Killu sought a consultation with Hershberger, an orthopedic surgeon. Hershberger saw Davis on June 6, 2000, and recommended incision and drainage, debridement, and exploration of the bone of the ankle. Hershberger also ordered continued intravenous antibiotics for six weeks and told Davis he may require additional surgeries and would require long-term intravenous antibiotics. Davis was discharged from the hospital on June 30, 2000, with orders to continue intravenous antibiotic treatment.

[¶ 3] Davis returned for an appointment with Killu on July 11, 2000. Killu believed Davis's condition had improved, continued him on the same antibiotics for another six weeks, and told him to follow up with the orthopedic clinic. On July 28, 2000, Davis returned to the orthopedic clinic and began treatment with another orthopedic surgeon, Dr. Ravindra Joshi. On August 7, 2000, Joshi sent a sample from a blister that had formed on the bottom of Davis's right foot to the North Dakota Health Department for fungal analysis, and the test came back positive. Davis was transferred to the Mayo Clinic, where his leg was amputated below the right knee on August 15, 2000. It was later determined that Davis's condition was caused by blastomycosis, a rare fungal infection of the bone which does not respond to antibiotic treatment.

[¶ 4] In February 2002 Davis brought this medical malpractice action against Killu, Hershberger, and various associated corporate health care providers. Davis alleged Killu and Hershberger were negligent in failing to timely diagnose and treat the fungal infection in his right ankle, which resulted in the amputation of his right leg. In August 2004 a nine-person jury returned a verdict in favor of the defendants, finding that neither Killu nor Hershberger was at fault in the care and treatment they provided Davis.

II

[¶ 5] On appeal, Davis challenges evidentiary rulings made by the trial court during the course of the five-day jury trial.

[¶ 6] A trial court has broad discretion on evidentiary matters, and we will not overturn its admission or exclusion of evidence on appeal unless that discretion has been abused. *Forster v. West Dakota Veterinary Clinic*, 2004 ND 207, ¶ 40, 689 N.W.2d 366. A trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process. *Schaefer v. Souris River Telecomms. Coop.*, 2000 ND 187, ¶ 10, 618 N.W.2d 175. Even if the trial court commits an error on an evidentiary matter, N.D.R.Civ. P. 61 provides that "[n]o error in either the admission or the exclusion of evidence . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." *See also* N.D.R.Ev. 103(a) ("Error may not be predicated upon a ruling which admits or

excludes evidence unless a substantial right of the party is affected"). We apply this deferential standard of review to provide trial courts with greater control over the admissibility of evidence. *Schaefer*, at ¶ 10.

## A

[¶ 7] Davis argues the trial court erred in refusing to allow his medical expert, Dr. Henry Masur, a board certified infectious disease specialist, to testify about opinions contained in Davis's Mayo Clinic medical records which had been redacted from those records for purposes of the trial.

[¶ 8] In *Patterson v. Hutchens*, 529 N.W.2d 561, 564–65 (N.D.1995), this Court held that the trial court did not abuse its discretion in refusing to admit into evidence the plaintiff's medical records containing the opinion of a physician who was not a witness at trial and was not available for cross-examination. In this case, no Mayo Clinic physicians testified at trial. Based on *Hutchens*, the parties agreed, and the trial court ruled, that opinions of the physicians would be redacted from Davis's Mayo Clinic medical records before those records would be received in evidence. Hershberger also brought a motion in limine to preclude Davis's expert witness, Masur, from testifying about the medical opinions of Mayo Clinic physicians which had been redacted from the records. The trial court and Davis's counsel had the following discussion during the hearing on the motion:

> THE COURT: I'm assuming though that your [sic] going to agree, Mr. Slorby, that your expert cannot testify from redact—or to redacted portion of the Mayo Clinic records though, right?
>
> MR. SLORBY: No, it's not in evidence. But if he still testifies to what happens with infectious diseases when they go too long in the bone and what happens.
>
> THE COURT: But he cannot, again, he cannot testify to any redacted portion of the Mayo Clinic records.
>
> MR. SLORBY: Right. But he can also testify that he has no professional dispute with the treatment at Mayo Clinic. That's not testifying to redacted the [sic] parts.

The trial court granted the motion in limine. Davis made no offer of proof of the specific testimony he sought to elicit from Masur that was barred by the trial court's ruling. Moreover, the record does not contain an unaltered copy of Davis's Mayo Clinic medical records before portions of it were redacted.

[¶ 9] Davis contends the trial court's ruling is "plain error" in violation of N.D.R.Ev. 703, which provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

According to Davis, Masur should have been allowed to testify to the redacted hearsay of the Mayo Clinic physicians from his medical records because, although the redacted portions were not admissible in evidence, the Mayo Clinic physicians' opinions constituted facts or data reasonably relied upon by Masur in forming his expert opinion.

[¶ 10] This Court has recognized that an expert witness "should be permitted to describe otherwise inadmissible hearsay relied upon in order to give the basis for the opinion." *State v. Messner*, 1998 ND 151, ¶ 26, 583 N.W.2d 109; *see also In re*

*D.V.A.*, 2004 ND 57, ¶ 9, 676 N.W.2d 776; *Myer v. Rygg*, 2001 ND 123, ¶¶ 19–20, 630 N.W.2d 62; *Anderson v. A.P.I. Co. of Minnesota*, 1997 ND 6, ¶¶ 14–17, 559 N.W.2d 204; *Staiger v. Gaarder*, 258 N.W.2d 641, 648 (N.D.1977). However, we have not held that N.D.R.Ev. 703 allows an expert witness free reign to act as a mouthpiece for inadmissible hearsay evidence. Courts have addressed the apparent contradiction between evidentiary rules allowing an expert to base an opinion upon facts or data not admissible in evidence and the inadmissibility of hearsay reports. In *Brennan v. Reinhart Inst. Foods*, 211 F.3d 449, 451 (8th Cir.2000), the Eighth Circuit Court of Appeals, construing Fed.R.Evid. 703 upon which N.D.R.Ev. 703 is based, *see* N.D.R.Ev. 703, Explanatory Note, reconciled the issue "by allowing an expert to testify about facts and data outside of the record for the limited purpose of exposing the factual basis of the expert's opinion," and encouraged trial courts to "instruct juries as to the limited applicability of the hearsay evidence by informing the jury that the hearsay is inadmissible as substantive evidence to prove the truth of the fact asserted."

[¶ 11] Numerous other courts have explained that an expert's testimony may not be used merely as a conduit to place otherwise inadmissible evidence before a jury, because an expert who simply relates inadmissible hearsay to the factfinder is not acting in the capacity of an expert and is not being of any assistance to the factfinder. *United States v. Stone*, 222 F.R.D. 334, 339, 341 (E.D.Tenn.2004); *see also Gong v. Hirsch*, 913 F.2d 1269, 1272–73 (7th Cir.1990); *Department of Corr. v. Williams*, 549 So.2d 1071, 1072 (Fla.App. 1989); *Bruflat v. Mister Guy, Inc.*, 933 S.W.2d 829, 833 (Mo.App.1996), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. 2003); *Matter of Renewal of Teaching*

*Certificate of Thompson*, 270 Mont. 419, 893 P.2d 301, 307 (1995); *State v. Towne*, 142 Vt. 241, 453 A.2d 1133, 1135 (1982); *McGinn v. State*, 928 P.2d 1157, 1162 (Wyo.1996). "[Federal Rule of Evidence 703] does not indicate whether the expert may reveal to the jury the factual basis of his opinion if those facts are not independently admissible into evidence." *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1270 (7th Cir.1988) (footnote omitted); *see also Gong*, 913 F.2d at 1273. Consequently, both federal and state courts have indicated a trial court has discretion to exclude underlying hearsay information if its probative value is outweighed by the danger of unfair prejudice. *See, e.g., United States v. Dukagjini*, 326 F.3d 45, 51–52 (2nd Cir.2003); *Gong*, 913 F.2d at 1273; Annot., *Admissibility of testimony of expert, as to basis of his opinion, to matters otherwise excludible as hearsay—state cases*, 89 A.L.R.4th 456, § 9 (1991), and cases collected therein. In 2000 the Fed.R.Ev. 403 balancing test was incorporated into Fed.R.Ev. 703 when the latter rule was amended to specifically provide that "[f]acts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." *Dukagjini*, 326 F.3d at 51 n. 3. Although N.D.R.Ev. 703 has not been amended to include the federal revision, this Court has recognized that, under N.D.R.Ev. 403, "[e]xpert testimony, like other evidence, even if probative, is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumu-

lative evidence." *Praus ex rel. Praus v. Mack*, 2001 ND 80, ¶ 34, 626 N.W.2d 239.

[¶ 12] There is often a fine line between an expert merely relating inadmissible hearsay and an expert giving testimony about inadmissible facts or data upon which the expert's opinion is based. Assuming for purposes of argument that Davis's counsel's ambiguous response to the trial court's question whether counsel agreed the expert could not testify to any redacted portions of the Mayo Clinic records is sufficient to preserve this issue for review, Davis has the burden of affirmatively establishing that the trial court abused its discretion in excluding the challenged evidence. *See Knoll v. Kuleck*, 2004 ND 199, ¶ 6, 688 N.W.2d 370. We must also have a record that will permit informed appellate review. *See Wagner v. Peterson*, 430 N.W.2d 331, 333 (N.D.1988).

[¶ 13] The unaltered portions of Davis's Mayo Clinic records that were redacted before the records were admitted in evidence are not a part of the record on appeal. Davis made no offer of proof of the specific testimony that he sought to introduce and which the trial court excluded. Although Hershberger's counsel informed the trial court that the "hearsay record from the Mayo Clinic" contained "something to the effect that it had gone to the point where it was beyond ... redemption, or beyond repair or something like that," this information is insufficient to determine whether the excluded testimony would have been used merely as a conduit to place otherwise inadmissible evidence before a jury or as the facts or data upon which Masur based his opinion. Without a sufficient offer of proof, we are unable to review whether the court erred in excluding the evidence or whether exclusion of the evidence was prejudicial. *Forster*, 2004 ND 207, ¶ 43, 689 N.W.2d 366. Under these circumstances, we cannot say the trial court abused its discretion in excluding the evidence.

### B

[¶ 14] Davis argues the trial court erred in admitting evidence that he had been terminated from his employment.

[¶ 15] On direct examination, Davis testified about his employment background, including that he had held a teaching position at Tioga High School. On cross-examination, Killu's counsel asked Davis whether he had been terminated from his teaching position there. After Davis's counsel objected, the trial court ruled the relevance of the reasons for Davis's termination was outweighed by the possibility of prejudice, but the fact of termination alone would complete Davis's employment picture and would be admissible. Davis was allowed to answer the question and agreed that he was terminated from his teaching position.

[¶ 16] Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.D.R.Ev. 401. A district court has broad discretion when ruling whether proffered evidence is relevant. *See Schmidt v. Bakke*, 2005 ND 9, ¶ 26, 691 N.W.2d 239. We agree with Davis that the termination of his employment as a teacher was not relevant to any issue before the trial court in this medical malpractice case. Nevertheless, we must disregard an error that does not affect the substantial rights of the parties. *See In re K.S.*, 2002 ND 164, ¶ 11, 652 N.W.2d 341. Here, Davis's termination from his teaching position did not affect a substantial right because this information had no bearing on the jury's finding that Killu and Hershberger were not at fault in the care and treatment they

provided Davis. Nonprejudicial mistakes by the trial court constitute harmless error and are not grounds for reversal. *Id.* This error was harmless.

## C

 [¶ 17] Davis argues the trial court erred in excluding evidence of Hershberger's licensing status.

[¶ 18] Before the trial began, Hershberger made a motion in limine to exclude reference to his medical license status. The issue arose during Hershberger's deposition when Davis's counsel at the time suggested that Hershberger was licensed to practice only at the Medical Arts Clinic rather than at UniMed Medical Center, which was associated with the clinic and had granted Hershberger surgical privileges. At the hearing on the motion, Davis's counsel said "licensing is an issue. If he's not licensed, he's not licensed. If he is, he is." After Hershberger's counsel explained that Hershberger had a license to practice medicine in North Dakota and any "mix-up" involved whether he had surgical privileges to treat patients at both the Medical Arts Clinic and UniMed Medical Center, Davis's attorney responded:

> MR. SLORBY: That's an unnecessary distraction.
> THE COURT: No objection?
> MR. SLORBY: No issue.
> THE COURT: Granted as to that.

[¶ 19] On the fourth day of trial, the following exchange occurred between Davis's counsel and the trial court:

> MR. SLORBY: ... On the license—I didn't know that we had addressed that.
> THE COURT: Well, we had. We clearly had. Yes.
> MR. SLORBY: Okay. I have a great memory.
> THE COURT: We clearly had addressed that.

> MR. SLORBY: Well, if he is licensed it's not an issue, but if he wasn't licensed then that would be a proper issue.
> THE COURT: We already talked about that. That's been resolved.
> MR. SLORBY: I'm drawing a blank.

Davis's counsel did not pursue the matter further.

 [¶ 20] Because a touchstone for an effective appeal on any proper issue is that the matter was appropriately raised so the trial court could intelligently rule on it, a failure to object acts as a waiver of the claim of error. *See May v. Sprynczyna-tyk,* 2005 ND 76, ¶ 25, 695 N.W.2d 196. We conclude Davis waived any objection to exclusion of evidence about Hershberger's medical license status. *See Gonzalez v. Tounjian,* 2003 ND 121, ¶ 34, 665 N.W.2d 705. Nor has Davis persuaded us that the refusal to allow introduction of this evidence affected his substantial rights, which is necessary for us to analyze the issue under N.D.R.Ev. 103(d). Other than alleging "[t]here was some evidence or issue as to whether or not Dr. Hershberger was properly licensed at the time medical services were rendered," Davis has pointed to no evidence the trial court excluded that raises any doubt that Hershberger was licensed to practice medicine in North Dakota. From our review of the record, any "mix-up" concerned the status of Hershberger's surgical privileges at the clinic and the medical center. This evidence may have had some relevance to the fault of the clinic and medical center, but not to the fault of Hershberger. Moreover, the special verdict form required the jury to determine only whether Killu and Hershberger were at fault, not whether the clinic and medical center were at fault. Therefore, even if Davis's objection was preserved, any error would have been harm-

less because of the verdict form and the jury's verdict in this case.

### III

[¶ 21] In his cross-appeal, Hershberger contends the trial court erred in denying his N.D.R.Civ.P. 50 motions for judgment as a matter of law during the trial. In view of our disposition of Davis's appeal, it is unnecessary to address this issue. The judgment is affirmed.

[¶ 22] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., and BENNY A. GRAFF, Surrogate Judge, concur.

[¶ 23] The Honorable BENNY A. GRAFF, Surrogate Judge, sitting in place of KAPSNER, J., disqualified.