2011 ND 206

**Alvin PETERSON, Appellant and Cross–Appellee,**

v.

**Todd SANDO, State Engineer and North Dakota State Water Commission, Appellees and Cross–Appellants.**

**No. 20110083.**

Supreme Court of North Dakota.

Oct. 20, 2011.

Rehearing Denied Nov. 17, 2011.

Tami Lyn Norgard (argued), Fargo, N.D., and Jade Marie Rosenfeldt (appeared), Moorhead, MN, for appellant and cross-appellee.

Jennifer Leigh Verleger, Assistant Attorney General, Attorney General's Office, Bismarck, N.D., for appellees and cross-appellants.

VANDE WALLE, Chief Justice.

[¶ 1] Alvin Peterson appealed and the State Engineer, Todd Sando, cross-appeal-

ed from a district court judgment affirming in part and reversing in part a State Engineer order determining there was an unauthorized dam on Peterson's property in Walsh County and requiring Peterson to construct a drainage ditch to maintain water impounded by the dam at a level of 1543.5 feet mean sea level. The primary issue in this case involves the determination of the natural elevation of land at the site of the dam for purposes of deciding if the land impounded sufficient water to necessitate a water or construction permit. We affirm the judgment in part, reverse in part, and we affirm the State Engineer's order.

I

[¶ 2] Peterson owns land in Walsh County, which, along with other land in the area, contains a slough in a closed basin. Sometime before 1973, Peterson dug a ditch to drain the slough. In 1973, the United States Department of Interior, Fish and Wildlife Service ("USFWS"), the holder of wetland conservation easement for the slough, required Peterson to restore the drained wetland by constructing a ditch plug to maintain the slough at a minimum of 1543.0 feet mean sea level.

[¶ 3] In August 2009, Peterson's neighbor filed a complaint with the State Engineer under N.D.C.C. § 61–16.1–53.1, alleging an unauthorized dam existed on Peterson's land. The neighbor claimed Peterson had raised the height of the ditch plug above the slough's natural overflow elevation, which resulted in the impoundment of additional water in the slough without necessary water or construction permits under N.D.C.C. §§ 61–04–02 and 61–16.1–38.

[¶ 4] Laura Ackerman, a water resource engineer with the State Water Commission, investigated the ditch plug and the area impounding the slough. Ac-

cording to Ackerman's December 2009 interoffice report, there had been a history of problems with the ditch plug since 1973, including a 1996 complaint that the ditch plug was impounding additional water in two sections of land and damaging a township road between those sections. Ackerman's report stated a 1996 field inspection revealed two ditch plugs in the area, and one of the plugs was "obviously higher than what the topography would indicate to be the natural outlet elevation." Her report explained that the Walsh County Water Resource Board had obtained an injunction to lower that ditch plug one foot to save the township road and an agreement was entered to construct the top of the plug at 1543.0 feet mean sea level. Ackerman's report also described a 1998 complaint about the ditch plug and investigation, which determined that from one half to one foot of fill had been placed on top of the berm and resulted in an injunction to lower the plug to 1543.0 feet mean sea level. Ackerman's report further detailed complaints about the ditch plug from 2007 through 2009 and attempts to resolve those complaints. Ackerman's report identified a man-made rock ridge at the ditch plug which was higher than the surrounding topography. Based on her investigation and available information, Ackerman concluded the natural overflow elevation of Peterson's land was 1543.0 feet mean sea level and the overflow elevation of the raised ditch plug was 1543.9 feet mean sea level. Ackerman concluded Peterson's land impounded more than fifty acre-feet of water above its natural overflow elevation without water or construction permits required by N.D.C.C. §§ 61–04–02 and 61–16.1–38. She recommended that the State Engineer order Peterson to lower the ditch plug to 1543.0 feet mean sea level.

[¶ 5] The State Engineer thereafter ordered Peterson to lower the elevation of the dam on his land to no greater than 1543.06 feet mean sea level and no less than 1543.0 feet mean sea level. Peterson requested an administrative hearing. After an administrative hearing, an administrative law judge ("ALJ") effectively recommended to the State Engineer that Peterson lower the entire dam to 1543.5 feet mean sea level, or dig a ditch through the area to drain the slough to that level. The State Water Commission petitioned the State Engineer for review, asking the State Engineer to require the dam to be lowered to 1543.0 feet mean sea level. The State Engineer adopted the ALJ's recommended decision and ordered Peterson to construct and maintain a channel through or around the unauthorized dam to drain the slough to 1543.5 feet mean sea level.

[¶ 6] On appeal to the district court, the court affirmed the State Engineer's order requiring Peterson to maintain the dam at 1543.5 feet mean sea level, but reversed the part of the order requiring Peterson to dig a drainage ditch to maintain the slough at that level. The court also awarded the State Engineer "costs as allowed by law," and the State caused a judgment to be entered which "awarded [the State Engineer] costs as allowed by law" without any delineation of costs.

## II

[¶ 7] When a decision of an administrative agency is appealed from the district court to this Court, we review the agency's decision and the record compiled before the agency. *Reinholdt v. North Dakota Dep't of Human Servs.*, 2009 ND 17, ¶ 10, 760 N.W.2d 101; *Rennich v. North Dakota Dep't of Human Servs.*, 2008 ND 171, ¶ 10, 756 N.W.2d 182. Courts exercise a limited review in appeals from administrative agency decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Rennich*, at ¶ 10. Under N.D.C.C. § 28–32–49, our standard of review of an agency's decision is the same as the standard applied by the district court under N.D.C.C. § 28–32–46. *Rennich*, at ¶ 10. We will not reverse an agency's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

[¶ 8] In determining whether an agency's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the agency; rather, we determine only whether a reasoning mind reasonably could have determined the agency's factual conclusions were proved by the weight of the

evidence from the entire record. *Rennich,* 2008 ND 171, ¶ 11, 756 N.W.2d 182; *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214, 220 (N.D.1979). Questions of law are fully reviewable on appeal from an agency's decision. *Reinholdt,* 2009 ND 17, ¶ 10, 760 N.W.2d 101; *Rennich,* at ¶ 11.

### III

[¶ 9] In its cross-appeal, the State Engineer argues the district court erred in not affirming the State Engineer's order on the ground of judicial estoppel. The State Engineer argues Peterson has taken inconsistent positions in the State Water Commission's petition to the State Engineer to review the ALJ's recommendation and in his appeal to the district court. The State Engineer claims Peterson supported the ALJ's recommendation to maintain the slough at 1543.5 feet mean sea level in the State Water Commission's petition to the State Engineer to review the ALJ's recommendation and argues Peterson received exactly the outcome he requested in that proceeding. The State Engineer claims Peterson is judicially estopped from seeking different relief in his appeal to the district court, or this Court.

■ [¶ 10] "Judicial estoppel prohibits a party from assuming inconsistent or contradictory positions during the course of litigation." *BTA Oil Producers v. MDU Res. Group, Inc.,* 2002 ND 55, ¶ 14, 642 N.W.2d 873. In *BTA,* at ¶ 14 (quoting 28 Am.Jur.2d *Estoppel and Waiver* § 74 (2000) (footnotes omitted)), we explained the underlying rationale for judicial estoppel:

> The fundamental concept of judicial estoppel is that a party in a judicial proceeding is barred from denying or contradicting sworn statements made therein. Judicial estoppel is a judge-made doctrine that seeks to prevent a litigant from asserting a position in-

consistent, conflicts with, or is contrary to one that she has previously asserted in the same or in a previous proceeding; it is designed to prevent litigants and their counsel from playing fast and loose with the courts, and to protect the integrity of the judicial process. Judicial estoppel doctrine is equitable and is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories. The purpose of the doctrine of judicial estoppel is to reduce fraud in the legal process by forcing a modicum of consistency on the repeating litigant.

The doctrine applies only where a party's subsequent position is totally inconsistent with its original position, and does not apply where distinct or different issues or facts are involved.

[¶ 11] In *Dunn v. North Dakota Dep't of Transp.,* 2010 ND 41, ¶ 10, 779 N.W.2d 628, we recognized we had "consistently assumed, without deciding, the doctrine of judicial estoppel applies in North Dakota." In *Dunn,* at ¶ 10, we said that in several cases, we had declined to apply judicial estoppel because a party's subsequent position was not entirely inconsistent with that party's original position. *See DeMers v. DeMers,* 2006 ND 142, ¶¶ 18–19, 717 N.W.2d 545; *Ingebretson v. Ingebretson,* 2005 ND 41, ¶¶ 16–18, 693 N.W.2d 1; *Meide v. Stenehjem ex rel. State,* 2002 ND 128, ¶¶ 13–15, 649 N.W.2d 532; *BTA,* 2002 ND 55, ¶¶ 13–18, 642 N.W.2d 873. In *Dunn,* at ¶ 11, however, we concluded a litigant was judicially estopped from taking inconsistent and contrary legal positions in a separate application for a writ of mandamus and in a subsequent appeal to this Court.

■ [¶ 12] Here, the district court decided Peterson's position in his appeal to that court was not entirely inconsistent

with his position before the State Engineer. Peterson's primary position in the administrative process was that the natural elevation of the land near the slough was 1543.9 feet mean sea level and that he had done nothing to manipulate or alter the natural elevation of the land. He claimed he should not be required to bear the costs of constructing a ditch to drain the slough. The ALJ effectively recommended to the State Engineer that Peterson be required to lower the dam to 1543.5 feet mean sea level, and the State Water Commission petitioned the State Engineer for review, asking the State Engineer to require the dam to be lowered to 1543.0 feet mean sea level. The State Engineer cites the following passage from Peterson's response to the State Water Commission's petition for review of the ALJ's recommendation: "While Alvin Peterson believes the background elevation is actually greater than 1543.5, Alvin Peterson supports the ALJ's recommendation and urges the State Engineer to adopt the ALJ's recommendation." However, that statement must be read within the context of Peterson's entire response, which claimed the evidence did not support a finding of a historic water level of 1543.0, or that Peterson had manipulated the topography of the land near the dam. See BTA, 2002 ND 55, ¶ 17, 642 N.W.2d 873 (in assessing judicial estoppel, statements must be read within context of litigation). Peterson further claimed the State Engineer did not have authority to order him to create a drain to benefit the township and other adjacent landowners. Peterson's response also stated the State Water Commission had failed to present any admissible evidence to the ALJ to establish the natural elevation of the area, which mirrors his position in his appeal to the district court and to this Court.

[¶ 13] We conclude Peterson has not taken entirely inconsistent positions in the administrative process and his appeal to the district court. We therefore conclude his appeal is not barred by judicial estoppel.

IV

[¶ 14] Peterson argues the ALJ abused its discretion in admitting into evidence a June 17, 2009 letter from the Natural Resources Conservation Service to the Walsh County Water Resource District to establish that the natural elevation of his land near the slough was 1543.0 feet mean sea level for purposes of calculating whether he had constructed or maintained a dam that impounded more water than authorized by N.D.C.C. §§ 61–04–02 and 61–16.1–38. Peterson claims the letter constitutes double hearsay, because it contains facts taken from the Natural Resources Conservation Service's 1997 "trip report" to his land, including the following statements:

3. Current elevation of ditch plug is 1542.7 MSL.

4. The ditch plug is located in the correct location.

5. Elevation of plug needed to satisfy USFWS and protect the township road between sections 22 and 23 is 1543.0.

6. Historic wetland boundary based on soil investigation is 1543.2 (historic level of saturation).

7. Historic level of ponded water is 1541.9.

8. A 1937 black and white photo indicates wet conditions existed just downstream of the dike—indicating that during high runoff periods the entire natural drainage area can be covered with standing and running water depending on the elevation of the water. The entirety of the soil, topography and hydrology (includes

photograph) data does not support the claim that a natural berm existed at an elevation of 1543.9 prior to manipulations.

9. [Natural Resources Conservation Service] considers the basin restored at an elevation of 1543.0.

[¶ 15] Peterson argues the statements in the letter are "classic" hearsay and the letter was improperly admitted into evidence by the ALJ under N.D.R.Ev. 703, which deals with the bases of opinion testimony by experts and provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

[¶ 16] Under N.D.C.C. § 28-32-24(1), the admissibility of evidence in an adjudicative proceeding before an administrative agency is governed by the North Dakota Rules of Evidence. We review a hearing officer's evidentiary rulings under the abuse-of-discretion standard. *Knudson v. Director, N.D. Dep't of Transp.*, 530 N.W.2d 313, 316–17 (N.D. 1995). An abuse of discretion occurs when a decision is arbitrary, unreasonable, or capricious, or not the product of a rational mental process, or a misapplication or misinterpretation of the law. *See Davis v.*

*Killu,* 2006 ND 32, ¶ 6, 710 N.W.2d 118; *Knudson,* at 316.

[¶ 17] We have "recognized that an expert witness 'should be permitted to describe otherwise inadmissable hearsay relied upon in order to give the basis for the opinion.'" *Davis,* 2006 ND 32, ¶ 10, 710 N.W.2d 118 (quoting *State v. Messner,* 1998 ND 151, ¶ 26, 583 N.W.2d 109). However, we have also explained that experts do not have "free reign to act as a mouthpiece for inadmissible hearsay evidence," and there "is often a fine line between an expert merely relating inadmissible hearsay and an expert giving testimony about inadmissible facts or data upon which the expert's opinion is based." *Davis,* at ¶¶ 10, 12. In *Davis,* at ¶ 11, we said N.D.R.Ev. 703 had not yet been amended to track a 2000 amendment to F.R.Ev. 703, which incorporated the balancing test of F.R.Ev. 403 for determining admissibility of otherwise inadmissable facts or data for an opinion under F.R.Ev. 703. Rule 703, N.D.R.Ev., was amended, effective March 1, 2007, to provide that "[f]acts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."

[¶ 18] We have also recognized that N.D.R.Ev. 702 "'envisions generous allowance of the use of expert testimony if [proffered] witnesses are shown to have some degree of expertise in the field in which they are to testify.'" *Langness v. Fencil Urethane Sys., Inc.,* 2003 ND 132, ¶ 8, 667 N.W.2d 596 (quoting *Anderson v. A.P.I. Co.,* 1997 ND 6, ¶ 9, 559 N.W.2d 204). A witness's qualifications may be established by knowledge, skill, experience, or education, if the witness's knowledge, training, education, and experience

will assist the trier-of-fact. *Langness*, at ¶ 8. A trial court's decision that a witness is, or is not, qualified as an expert is discretionary. *Id.* at ¶ 9.

[¶ 19] Here, the ALJ admitted the 2009 letter from the Natural Resources Conservation Service to the Walsh County Water Resource District after hearing the parties' argument under N.D.R.Ev. 703. The information in the 2009 letter is the type of information that Ackerman could rely on in forming her opinion about the natural elevation of the area for purposes of her job as an engineer with regulatory responsibilities for permits and complaints about dams. Ackerman's opinion was expressed in her testimony and in her December 2009 interoffice memorandum to the State Engineer, which was also admitted into evidence at the administrative hearing. Under N.D.R.Ev. 703, the ALJ had discretion to admit "facts or data" that may be otherwise inadmissible to evaluate Ackerman's opinion. We conclude the ALJ's decision to allow the admission of the letter into evidence at the administrative hearing was not arbitrary, capricious, or unreasonable, or a misapplication or misinterpretation of the law and was the product of a rational mental process. We therefore conclude the ALJ did not abuse its discretion in admitting the letter into evidence.

[¶ 20] Peterson nevertheless asserts the evidence was insufficient to establish the natural elevation of the area and claims the natural elevation of the area is 1543.9 feet mean sea level. It is unlikely the historic natural elevation could ever by proven with the certain preciseness Peterson appears to demand. Peterson's arguments generally attack the weight to be given to the various items of evidence about the natural elevation of the land and the slough. We decline Peterson's invitation to reweigh that evidence,

and although each piece of evidence, by itself, may not have been sufficient to establish the natural elevation of the land, we conclude the cumulative effect of the evidence in the record is such that a reasoning mind could reasonably conclude the natural elevation of the land in the area was 1543.0 feet mean sea level. We also conclude a reasoning mind could conclude Peterson's land impounded sufficient water to require water or construction permits under N.D.C.C. §§ 61–04–02 and 61–16.1–38. We conclude the State Engineer's findings about the natural elevation of the land in the area and the amount of water impounded are supported by a preponderance of the evidence, and we therefore affirm the State Engineer's finding about an unauthorized dam on Peterson's land.

[¶ 21] Peterson also argues the State Engineer lacks authority to require him to dig a drainage ditch on his property to drain the slough to 1543.5 feet mean sea level. The State Engineer has authority under N.D.C.C. § 61–03–21.2 to order a person to modify an unauthorized dam. Because Peterson's land impounded sufficient water to require permits under N.D.C.C. §§ 61–04–02 and 61–16.1–38 and no permits had been procured, the State Engineer, as part of its authority to order a person to modify an unauthorized dam, had authority to require Peterson to construct a ditch to drain the slough to 1543.5 feet mean sea level at the site of the unauthorized dam. We reverse the district court judgment to the extent the court concluded the State Engineer lacked authority to require Peterson to construct a ditch to drain the slough to 1543.5 feet mean sea level, and we affirm the State Engineer's order in its entirety.

V

[¶ 22] Peterson argues the district court abused its discretion in awarding the State Engineer costs. The State

Engineer responds the district court had authority to award costs, but asserts a remand is necessary to ascertain those costs.

[¶ 23] The district court's decision on costs is a boilerplate, conclusory statement awarding the State Engineer "costs as allowed by law," and the State thereafter caused entry of a judgment that "awarded [the State Engineer] costs as allowed by law" without any delineation of those costs, or discussion of whether costs are allowed in the district court acting as an appellate court. We have a strong and longstanding policy against piecemeal appeals. *See, e.g., Investors Title Ins. Co. v. Herzig,* 2010 ND 138, ¶ 24, 785 N.W.2d 863. The State Engineer failed to take steps to delineate or include any specific costs in the judgment it caused to be entered. Under our jurisprudence disfavoring piecemeal appeals, we conclude the State Engineer's failure to include any further delineation for costs in the final judgment constitutes a waiver of any costs it may have been entitled to in a proceeding before a district court acting as an appellate court in an administrative proceeding. We decline the State Engineer's request to remand for a determination of the costs, if any, to which it may be entitled.

### VI

[¶ 24] We affirm the judgment in part and reverse in part, and we affirm the State Engineer's order.

[¶ 25] DALE V. SANDSTROM, and MARY MUEHLEN MARING, JJ., concur.

[¶ 26] The Honorable GARY H. LEE, D.J., sitting in place of KAPSNER, J., disqualified.

CROTHERS, Justice, specially concurring.

[¶ 27] I agree with the rationale and result reached in this case. I write separately to note what could mistakenly be read as my endorsement of a sweeping grant of authority to the State Engineer.

[¶ 28] Paragraph 21 of the Majority Opinion concludes, "[T]he State Engineer, as part of its authority to order a person to modify an unauthorized dam, had authority to require Peterson to construct a ditch to drain the slough to 1543.5 feet mean sea level at the site of the unauthorized dam." Under the circumstances present here, I agree with this conclusion. However, had the State Engineer adopted the ALJ's recommended order, I would have affirmed the district court's order reversing the State Engineer's order requiring Peterson to construct and maintain a channel in a specific location.

[¶ 29] The pertinent administrative history of this case includes the State Engineer's Administrative Order 10–1 requiring Peterson to lower the water impoundment "to an elevation no greater than 1543.06 feet msl and no less than 1543.0 feet msl." Peterson requested an administrative hearing, and the ALJ recommended that the State Engineer order lowering of the entire dam to 1543.5 feet msl or digging a drainage ditch. The ALJ's recommended order stated:

"The ALJ recommends that the State Engineer order that the unauthorized ditch plug or dam located at the dam site, identified in Conclusions of Law # 6, be lowered to 1543.0. He further recommends the State Engineer order that Peterson has the option of lowering the entire dirt berm and rock ridge immediately adjacent to the wetland or slough at the dam site to 1543.0 or digging a drainage ditch or channel at a level no lower than 1543.0 at the dam site through the dirt berm and rock ridge immediately adjacent to the wetland or slough. If Peterson chooses to dig a drainage ditch or channel at 1543.0

through the dirt berm and rock ridge, the drainage ditch or channel need only extend to the vicinity of contour elevation points immediately to the northwest of the dirt berm and rock ridge (points 1543.9, 1533.9[SIC], 1543.7, 1543.8, and 1543.9, extending from points A to B on Plan View Site 'A' of exhibit 8)."

Notwithstanding what appears to be limiting language in the ALJ's proposed order, the cited portion of Exhibit 8 contains a detailed route and location of the drainage ditch.

[¶ 30] The State Engineer subsequently issued Administrative Order 10–4 stating, "[T]he recommended order of the administrative law judge is not adopted as the State Engineer's final order in this matter." The Order instead "requires Peterson to construct and maintain a channel through or around the unauthorized dam, such that the water will overflow once the water level exceeds 1543.5 feet msl."

[¶ 31] Peterson appealed Administrative Order 10–4 to the district court, which reversed in part and stated:

"On the other hand, absent legal authority to do so, that part of the State Engineer's order of June 25, 2010, requiring Alvin Peterson to establish a drainage ditch is vacated. Rather, he only is required to lower the level of the unauthorized dam at the location of the berm and rock ridge so that the slough and wetland behind it retains water at a level no greater than 1543.5 feet MSL. If and when it exceeds that level, it must be allowed to naturally flow. Presumably after it fills the area between the berm and the contour line of 1543.5, it will again continue to flow into the natural drainage pathway."

[¶ 32] The State Engineer cross-appealed reversal of the ditching portion of the order. I agree with reversal of the district court's order, which in turn reversed the drainage ditch portion of Administrative Order 10–4. I agree with our reversal because the State Engineer imposed only the general requirement that Peterson create a drainage outlet regulating the water pool between specified levels. By contrast, the ALJ's proposed order apparently would have required a very specific "Drainage Outlet," to be constructed as a "Drainage Thread" laid out in a particular location on the 1″ to 60′ scale contour map depicted in Plan View Site "A" on Exhibit 8.

[¶ 33] The general direction in Administrative Order 10–4 reasonably falls within the State Engineer's authority under N.D.C.C. § 61–03–21.2 to require modification or removal of unauthorized "dams, dikes, wells, or other devices for water conservation, flood control, regulation, storage, diversion, or carriage of water." On the other hand, the specific construction that would have been required by the ALJ's proposed order appears beyond the State Engineer's statutory authority and, to me, would raise questions about compensable taking of private property for public use. See N.D. Const. art. 1, § 16. I therefore believe it is important for the decision in this case to be clear that we are affirming the general dictate in Administrative Order 10–4 that Peterson lower the pool level with a drainage ditch (rather than elimination of the entire dam structure), and that we are not holding the State Engineer's sweeping authority to issue a more exacting order requiring removal of the water impounded by an unlawful dam through construction of a specifically designed or specifically located drainage ditch on property down stream from the dam.

[¶ 34] GARY H. LEE, District Judge, concurs.