Filed 1/12/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 12

In the Interest of W.J.C.A.

Jill Krine, a/k/a Jill Krone, Petitioner and Appellee

v.

W.J.C.A., Respondent and Appellant

No. 20110361

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Lisa K. Fair McEvers, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Gary E. Euren (argued), Assistant State’s Attorney, Courthouse, P.O. Box 2806, Fargo, ND 58108-2806, for petitioner and appellee.

Douglas W. Nesheim (argued), 15 9th Street South, Fargo, ND 58103-1830, for respondent and appellant.

Interest of W.J.C.A.

No. 20110361

Kapsner, Justice.

[¶1] W.J.C.A. appeals from district court orders for involuntary mental health treatment and medication.  The orders committed W.J.C.A. to the North Dakota State Hospital for up to ninety days and allowed the State Hospital to treat him with medication during that time.  We hold the district court did not err in finding clear and convincing evidence to support its orders.  We affirm.

I

[¶2] W.J.C.A.’s probation officer filed a petition to involuntarily commit W.J.C.A.  In her petition, the probation officer stated W.J.C.A. was “making suicidal threats to his sisters along with leaving bizarre and rambling messages that threaten peopl[e]’s lives and appear out of touch with reality.”  The probation officer added W.J.C.A. had left such messages to “various [l]aw enforcement agencies” and “various people in the community[,]” asserting W.J.C.A. was “a danger to himself and others[.]”  The district court ordered a psychiatric examination and issued a warrant of attachment, ordering that W.J.C.A. be transported to the State Hospital for an examination.

[¶3] On November 1, 2011, the court held a preliminary hearing and received testimony from W.J.C.A. and his psychiatrist, Dr. William Pryatel.  Pryatel testified that, since arriving at the State Hospital, W.J.C.A. had been verbally abusive and abrasive to staff, making grandiose statements, and refusing medication.  Pryatel noted W.J.C.A. had also been admitted to the State Hospital twice in 2010, and the behavior W.J.C.A. was currently displaying was similar to his behavior during prior admittances.  W.J.C.A. testified his siblings were trying to have him wrongfully committed because of a family dispute over farmland.  Following the hearing, the court found probable cause to commit W.J.C.A. for fourteen days.

[¶4] On November 15, 2011, the court held a treatment hearing.  Pryatel testified he diagnosed W.J.C.A. with bipolar disorder, stating W.J.C.A. was presently in a manic state.  Pryatel testified W.J.C.A. continued to make grandiose statements, display an angry, irritable mood, and refuse medication.  Pryatel also testified regarding an incident of W.J.C.A. striking a staff member and threatening staff.  W.J.C.A. then testified, reiterating his belief that his siblings were attempting to wrongfully commit him.  With regard to Pryatel’s testimony that W.J.C.A. struck a staff member, W.J.C.A. claimed that a staff member had grasped him by an injured shoulder, causing him pain and possibly resulting in his accidental striking of a staff member; he denied threatening any staff members at the State Hospital.  At the close of the hearing, the district court found W.J.C.A. had a history of bipolar disorder, exhibited grandiose behavior, harassed other patients, and threatened and struck staff members.  The court also found clear and convincing evidence that W.J.C.A. was mentally ill, a danger to himself and others, and required treatment.  Finding no less restrictive alternative existed in W.J.C.A.’s best interests, the court ordered in-patient treatment at the State Hospital for up to ninety days.  The court also found involuntary medication was necessary because W.J.C.A.’s condition required medication, which he refused to take.

[¶5] On November 28, 2011, Pryatel petitioned for treatment of W.J.C.A. in a less restrictive environment.  W.J.C.A. was released from the State Hospital the next day.  On December 2, 2011, the district court entered an order for less restrictive treatment, ordering W.J.C.A. to undergo treatment at South East Human Service Center and to take all medications as prescribed for the remainder of the commitment period.

II

[¶6] On appeal, W.J.C.A. argues the court erred in finding clear and convincing evidence to support its orders for involuntary treatment and medication.  Chapter 25-

03.1, N.D.C.C., governs commitment procedures.  “This Court’s review of an appeal under N.D.C.C. ch. 25-03.1 is limited to a review of the procedures, findings, and conclusions of the trial court.”  
In re D.A.
, 2005 ND 116, ¶ 11, 698 N.W.2d 474.  “To balance the competing interests of protecting a mentally ill person and preserving that person’s liberty, the district court uses a clear and convincing standard of proof, while we use the more probing clearly erroneous standard of review.”  
In re W.K.
, 2009 ND 218, ¶ 12, 776 N.W.2d 572.  A finding of fact “is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire record this Court is left with a definite and firm conviction it is not supported by clear and convincing evidence.”  
Id.

A

[¶7] W.J.C.A. argues the district court erred in finding clear and convincing evidence to support its orders for involuntary treatment and claims the evidence was insufficient to establish he is a “person requiring treatment.”  Under N.D.C.C. § 25-

03.1-02(12), “‘Person requiring treatment’ means a person who is mentally ill or chemically dependent, and there is a reasonable expectation that if the person is not treated for the mental illness or chemical dependency there exists a serious risk of harm to that person, others, or property.”  “Direct evidence of overt violence or an expressed intent to commit violence are not required[]” to support a finding that a person poses a serious risk of harm.  
In re D.P.
, 2001 ND 203, ¶ 9, 636 N.W.2d 921.

[¶8] The court found clear and convincing evidence that W.J.C.A. is mentally ill and requires treatment.  “Mentally ill person” is defined as “an individual with an organic, mental, or emotional disorder which substantially impairs the capacity to use self-control, judgment, and discretion in the conduct of personal affairs and social relations.”  N.D.C.C. § 25-03.1-02(11).  W.J.C.A. claims Pryatel’s diagnosis was “based on reports to the doctor that [W.J.C.A.] had made threats of suicide and threats to others. . . .  There is no way the court could judge the credibility of the very evidence that formed the basis for the court’s finding that [W.J.C.A.] posed a danger to himself or others.”

[¶9] At the preliminary hearing, Pryatel testified as to the basis of W.J.C.A.’s admission to the State Hospital, stating others had reported that W.J.C.A. had threatened to harm them and himself.  Such testimony was not improper.  
See
 N.D.C.C. § 25-03.1-17 (governing preliminary hearings and providing the court “may receive evidence that would otherwise be inadmissible at a treatment hearing.”).  When Pryatel was questioned about the basis of W.J.C.A.’s admission during the treatment hearing, W.J.C.A. objected on hearsay grounds.  The court sustained his objection, and the question was withdrawn.  W.J.C.A. asserts that although his objection was sustained, “it is clear that the court’s findings and order[s] cannot be supported absent the court’s accepting that evidence for the truth of the matters stated.”

[¶10] Pryatel’s testimony at the treatment hearing pertained mainly to staff reports and his own observations of W.J.C.A.  Pryatel stated he was W.J.C.A.’s treating physician at the State Hospital and had seen W.J.C.A. numerous times.  Pryatel testified he reviewed medical charts and staff reports relating to W.J.C.A., including one report that W.J.C.A. had struck a staff member in the face and stated “there’s more where that came from.”  Pryatel noted W.J.C.A. had harassed a fellow patient, pounded on walls and doors, and threatened to shoot another staff member with a slingshot.  Pryatel testified W.J.C.A. was irritable, verbally abusive, and continued to make grandiose statements, calling himself the “Jesse Ventura of North Dakota” and talking about being governor himself.  Pryatel testified he diagnosed W.J.C.A. with bipolar disorder, adding W.J.C.A. was currently in a manic state.

[¶11] Expert witnesses are allowed to testify regarding otherwise inadmissible hearsay on which they rely in order to establish the basis of their opinion.  
Davis v. Killu
, 2006 ND 32, ¶ 10, 710 N.W.2d 118.  Experts are not entitled to “free reign to act as a mouthpiece for inadmissible hearsay evidence.”  
Id.
  We have recognized that N.D.R.Ev. 702 “envisions generous allowance of the use of expert testimony if [proffered] witnesses are shown to have some degree of expertise in the field in which they are to testify.”  
Peterson v. Sando
, 2011 ND 206, ¶ 18 (quoting 
Langness v. Fencil Urethane Sys., Inc.
, 2003 ND 132, ¶ 8, 667 N.W.2d 596).  “A medical expert must often rely on second-hand information unless it is demonstrably unreliable.”  
In re P.L.P.
, 556 N.W.2d 657, 660 (N.D. 1996) (citing N.D.R.Ev. 703; Fed. R. Evid. 703, Advisory Committee Notes).  The Advisory Committee Notes to Fed. R. Evid. 703 provide:

[A] physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays. . . .  The physician makes life-and-death decisions in reliance upon them.  His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.

Pryatel is a licensed psychiatrist, qualifying him as an expert, and his testimony regarding staff reports, along with his own observations of W.J.C.A., was proper to establish the basis of his medical opinion.  We conclude the court did not err in finding clear and convincing evidence that W.J.C.A. is mentally ill.

[¶12] W.J.C.A. also argues the court erred in finding he presented a serious risk of harm to himself or others.  Under N.D.C.C. § 25-03.1-02(12), “serious risk of harm” includes a substantial likelihood of:  “[s]uicide, as manifested by suicidal threats[;]” “[k]illing or inflicting serious bodily harm on another person or inflicting significant property damage, as manifested by acts or threats;” or substantial deterioration in physical or mental health.  While Pryatel did not state there would likely be a substantial deterioration of W.J.C.A.’s physical or mental health if left untreated, Pryatel testified it was his medical opinion that W.J.C.A. does not have insight into his condition.  Pryatel opined that without treatment, there would be a substantial likelihood of W.J.C.A. committing suicide or harming others or property.  At the treatment hearing, Pryatel testified W.J.C.A. had not made any suicidal threats while at the State Hospital, but W.J.C.A.’s sisters reported he had threatened to shoot himself, strangle one sister, and kill another sister and her children.  W.J.C.A. objected to Pryatel’s testimony, citing hearsay.  The court overruled the objection because Pryatel was testifying as an expert, and experts may describe hearsay relied upon to demonstrate the basis for their opinions.  During the time W.J.C.A. had been committed, Pryatel testified W.J.C.A. had threatened and struck staff, harassed another patient, and pounded on walls and doors.  According to Pryatel’s testimony, W.J.C.A.’s anger was not appropriate for someone who was not mentally ill but merely upset over family problems and being wrongfully committed; rather, W.J.C.A.’s behavior was consistent with bipolar disorder, and his exaggerated anger could become dangerous.  We have previously held that a district court properly relied on testimony that “was not based solely upon the allegations in the petition [for involuntary commitment],” but which had been “confirmed . . . through independent sources.”  
In re L.D.
, 2003 ND 182, ¶ 13, 671 N.W.2d 791.  Likewise, Pryatel’s conclusions were not based solely on reports from others but on his own observations and review of medical charts and staff reports.  W.J.C.A. did not present a mental health expert to refute Pryatel’s testimony.  We have recognized a “district court’s acceptance of unrefuted expert testimony showing [a committed individual] is mentally ill is not clearly erroneous.”  
D.P.
, 2001 ND 203, ¶ 6, 636 N.W.2d 921.  We determine the district court’s finding that W.J.C.A. is a person requiring treatment was not clearly erroneous.

B

[¶13] W.J.C.A. argues the district court erred in ordering involuntary treatment with medication.  Under N.D.C.C. § 25-03.1-18.1(1)(a), a court may order involuntary treatment with prescribed medication if a treating psychiatrist and an independent licensed physician certify:

(1) That the proposed prescribed medication is clinically appropriate and necessary to effectively treat the patient and that the patient is a person requiring treatment;

(2) That the patient was offered that treatment and refused it or that the patient lacks the capacity to make or communicate a responsible decision about that treatment;

(3) That prescribed medication is the least restrictive form of intervention necessary to meet the treatment needs of the patient; and

(4) That the benefits of the treatment outweigh the known risks to the patient.

Clear and convincing evidence of all four factors listed in N.D.C.C. § 25-03.1-

18.1(1)(a) is required before a court may issue an order for involuntary treatment with medication.  
In re C.A.H.
, 2010 ND 131, ¶ 21, 785 N.W.2d 253.

[¶14] In this case, Pryatel provided testimony regarding each of the four required factors.  Pryatel requested authorization to treat W.J.C.A. with one of four different medications and testified:  the medications requested are clinically appropriate to treat W.J.C.A.’s condition, and W.J.C.A. is a person requiring treatment; W.J.C.A. was offered but refused medication; the requested medications are the least restrictive form of intervention necessary to treat W.J.C.A.; and the benefits of the treatment outweigh the known risks to W.J.C.A.  In its order for involuntary treatment with medication, the district court specifically found each of the four required factors were satisfied.  We conclude the district court did not clearly err in ordering involuntary treatment with medication.

III

[¶15] We hold the district court’s finding that W.J.C.A. is a person requiring treatment is not clearly erroneous, and the court did not err in ordering involuntary treatment and medication.  We affirm the orders.

[¶16] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.